WILLIAM BLISS et al.

*v.*

LINDEN CEMETERY ASSOCIATION et al.

[Decided February 24th, 1913.]

1. It seems to be well settled in New Jersey that a trust for the establishment and maintenance of a cemetery or public burying ground is a charitable use within the meaning of that term, as it is commonly used.

2. If a trust for the establishment and maintenance of a cemetery is a charitable use, then a remedy must be sought in this court for such evils and irregularities as may arise in the administration of the trust by the corporation holding the legal title.

3. Proceedings to correct abuses may be instituted either by the attorney-general, or by the parties in interest.

4. The attorney-general ought to be brought into the suit, and, in case he should choose to do so, be given the right to take charge and control of that portion of the litigation which relates to the public right.

5. In suits for establishing, regulating, controlling or correcting charitable trusts, courts disregard all technicalities; if the case is brought before the court by bill or information, it takes jurisdiction over the administration of the charity, and makes the proper orders and decrees for the right administration of the fund, whether the pleadings are formal or informal, and whether the proper relief is prayed for or not.

6. Upon a motion for an injunction and the appointment of a receiver for a cemetery association organized under the Rural Cemetery act of this state, upon the ground of its insolvency, that it has been guilty of a large number of *ultra vires* acts, and for the general regulation of its affairs and the sale of its property, the answer of the association admitted that the association is insolvent and has not funds to carry on its ordinary business, and that there is great danger of its income being sequestered at the suit of creditors and its property sold, and consented to the appointment of a receiver in accordance with the prayer of the bill. It was thereupon urged on the part of the complainants that this state of facts would justify the court in appointing a receiver of the association property, and so remove the present trustees or deprive them of their control.—*Held*, there are two objections to this course, (1) that the present trustees are not parties to the suit, and have had no opportunity to present their side of the case, and (2) that this proceeding is not under our Insolvent Corporation act, and its provisions for summary investigation and action do not apply.

7. The Insolvent Corporation act contemplates the winding up of all the concerns of an insolvent corporation and the distributing among its creditors and shareholders of all its assets or the proceeds of the sale thereof. The insolvency of a charitable corporation produces entirely different results. It has no shareholders among whom the surplus after payment of debts can be divided. If the trust fails for lack of objects, or for any other cause, the fund, if any be left, will yet be administered by this court if necessary under the *cy pres* doctrine, and if there is no trustee to hold the fund this court will appoint one and give directions for the perpetuation of the .charity.

8. Under a covenant contained in the deed of conveyance to the cemetery association comprising the lands in question, parties in interest having been created called "land purchase shareholders," only a small number of whom have been included as defendants in the bill, the rights of this class cannot be adjudicated until all the members· of this class have been made parties.

9. The bill being defective for lack of parties, viz., (1) the attorney-general, (2) the present board of trustees, and (3) the holders of the land purchase shares, leave will be given to complainants to amend their bill by bringing them in, and to renew the motion, upon notice to all parties.

---

On motion for an injunction and the appointment of a receiver.

*Mr. Abram H. Cornish,* for the complainants.

*Mr. Robert D. Reynolds* and *Mr. Hugh B. Reed,* for the cemetery association.

*Mr. Ernest Quackenbush,* for L. T. Dyer and others.

*Mr. Terry Parker,* for Henry C. Boehl and others.

*Mr. William W. Welch,* for George T. Welch.

*Mr. James DeWitt Andrews* (of the New York bar), for C. O. Smith.

HOWELL, V. C. ·

This is a motion for an injunction and the appointment of a receiver for a cemetery association organized under the Rural · Cemetery act of this state, upon the ground of its insolvency, and upon the further ground that it has been guilty of a large

number of *ultra vires* acts, which are set out in the bill at length, for the general regulation of the affairs of the association, and the sale of its property. The injunction prayed for relates to its financial transactions. The bill is voluminous, the questions to be considered are complicated, and the number of people interested and the manner in which their interests have accrued renders the case important.

It may be well before going into the facts to examine some of the questions of law which must necessarily be appealed to. Notwithstanding the great contrariety of opinion held by the courts of the various states, it seems to be well settled in New Jersey that a trust for the establishment and maintenance of a cemetery or public burying grounds is a charitable use within the meaning of that term as it is commonly used. It was so held by Chancellor Runyon in *Stockton* v. *Newark, 42 N. J. Eq. (15 Stew.) 531,* and by Chief-Justice Beasley in the same case on appeal, *Newark* v. *Stockton, 44 N. J. Eq. (17 Stew.) 179.* The question there was what relation a plot of land called "The Old Burying Ground" was in with reference to the city of Newark, which held the legal title thereto. The chief-justice said: "The city holds the fee of the land as a public burying place, the same being a charitable use." In the case in hand the corporation created under the general law of the state took title to the fee-simple of the lands in question with a *habendum,* "to the party of the second part (the corporation) for the purpose of a cemetery;" the situation does not vary from that unanimously announced in *Newark* v. *Stockton.* Following this is the opinion of Vice-Chancellor Stevens in *Corin* v. *Glenwood Cemetery, 69 Atl. Rep. 1083,* holding to a similar conclusion.

If a trust for the establishment and maintenance of a cemetery is a charitable use, then the question arises in what jurisdiction must a remedy be sought for such evils and irregularities as may arise in the administration of the trust by the corporation holding the legal title. Undoubtedly, that jurisdiction is committed to this court. It was so held in *Norris* v. *Thomson, 19 N. J. Eq. (4 C. E. Gr.) 307;* affirmed in *20 N. J. Eq. (5 C. E. Gr.) 489;* in *Attorney-General* v. *Moore, 19 N. J. Eq. (4 C. E. Gr.) 503; DeCamp* v. *Dobbins, 29 N. J. Eq. (2 Stew.) 36; Tay-*

*lor* v. *Bryn Mawr College, 34 N. J. Eq. (7 Stew.) 101; Hesketh* v. *Murphy, 35 N. J. Eq. (8 Stew.) 23; Mills* v. *Davison, 54 N. J. Eq. (9 Dick.) 659; MacKenzie* v. *Trustees, 67 N. J. Eq. (1 Robb.) 652.* In *Attorney-General* v. *Moore, supra,* Mr. Justice Depue, speaking for the court of errors and appeals, says: "The court of chancery has an extensive jurisdiction over the subject of charitable uses, to uphold, protect and enforce their execution; but this jurisdiction is not so universal as to include the execution by the court of all trusts, or to authorize its interference in all cases of bequests to charitable uses. Its authority can only be invoked in exceptional cases, where no trustee is interposed, or where there is no person *in esse* capable of taking, or where the charity is of an indefinite nature, or its execution, according to the original purpose, is or has become impracticable. * * * In all such cases, however, if there be any abuse or misuse of the funds by the trustees, the court of chancery will interpose, at the instance of the attorney-general, or the parties in interest, to correct such abuse or misuse of the funds. But in such cases, the interposition of the court is properly referable to its general jurisdiction as a court of equity to prevent abuse of a trust, and not to any original right to direct the management of a charity or the conduct of the trustees."

Having ascertained the forum in which proceedings to correct abuses may be exhibited, we may next inquire who has the right to bring a suit for the purpose. As was well said by Mr. Justice Depue in the case last quoted, such proceedings may be instituted either by the attorney-general or by the parties in interest. In this case a proceeding is instituted by one lotholder and three creditors of the cemetery company on behalf of themselves and all other lotholders and creditors who shall come in and contribute to the expense of the suit. No serious question was made on the argument about the right of the complainants to institute proceedings as they have done; but, in my opinion, the attorney-general ought to be brought into the suit, and, in case he should choose to do so, be given the right to take charge and control of that portion of the litigation which relates to the public right. *Green* v. *Blackwell, 35 Atl. Rep. 375.*

There remains but one other consideration, and that relates to the practice and procedure in cases of this character:

> "In suits for establishing, regulating, controlling, or correcting charitable trusts, courts disregard all technicalities; if the case is brought before the court by bill or information, it takes jurisdiction over the administration of the charity, and makes the proper orders and decrees for the right administration of the fund, whether the pleadings are formal or informal, and whether the proper relief is prayed for or not. In charity cases, the most expeditious and least expensive methods should be adopted; and a proper decree for relief will be made, although relief of an entirely different character is prayed for. Courts are not bound by the strict rules of practice in granting injunctions or stay of proceedings at law in such cases. It cannot be objected to a proceeding by the attorney-general in equity, in the matter of a charity, that there is an adequate remedy at law. But if there are any such informalities in the record as will be prejudicial to the defendants, the court will not proceed until such informalities are corrected." *Perry Trusts* § 746.

If the complainants have made a case of misuse or abuse, or destruction, or threatened impairment of the trust fund in this case, it must come within the rules of law above recited, which seem to be so well settled.

There are no papers before me excepting the bill and affidavits and the answer of the cemetery association. This answer admits that the association is insolvent and has not funds to carry on its ordinary business, and that there is great danger of its income being sequestered at the suit of creditors and its property sold; and it consents to the appointment of a receiver in accordance with the prayer of the bill.

All the parties now before the court admit that the corporation is in financial straits and has been obliged to suspend its ordinary business for want of funds to carry on the same. The bill alleges, and it is proved by the affidavits, that the corporation is indebted in the sum of upwards of $135,000, that it has owing to it about $20,000, over $15,000 of which is due from the Rosedale Cemetery Company, a corporation which is likewise alleged to be insolvent; besides this is the real estate, the value of which is wholly unknown. The whole tract of land, consisting of approximately one hundred and thirty acres, appears to have been devoted to burial purposes; interments have been made in almost every part of it, the aggregate being nearly two thousand, and it

is thus rendered entirely useless throughout for any purpose other than a cemetery. The sale of lots may go on in the present condition of affairs if purchasers therefor can be found, but the ordinary work of caring for the grounds and the preservation and development of the property must come to an end for lack of funds. The situation seems to be one which involves the liability not only to great loss and inconvenience to the lotholders and creditors, but also, in time, to the obliteration of the cemetery enterprise, with an unknown and unascertainable future for the tract of land and the burials already made in it.

It is urged on the part of the complainants that this state of facts would justify the court in appointing a receiver of the association property, and so remove the present trustees or deprive them of their control. There are two objections to this course; one is that the present trustees are not parties to the suit, and have had no opportunity to present their side of the case. The other is that this proceeding is not under our Insolvent Corporation act, and its provisions for summary investigation and action do not apply. In my opinion that act does not apply to the case of an insolvent or decayed corporation administering a charitable use. It contemplates the winding up of all the concerns of an insolvent corporation and the distributing among its creditors and shareholders of all its assets or the proceeds of the sale thereof. The insolvency of a charitable corporation produces entirely different results. It has no shareholders among whom the surplus after payment of debts can be divided. If the trust fails for lack of objects, or for any other cause, the fund, if any be left, will yet be administered by this court, if necessary, under the *cy pres* doctrine, and if there is no trustee to hold the fund, this court will appoint one and give directions for the perpetuation of the charity. It may be that in administering the affairs of an insolvent charitable corporation some of the procedure which applies to insolvent business corporations might profitably be used, but when the obligations are paid, and there remains a fund, such fund cannot be disposed of or used for any purpose except the purpose of the charity to which it was originally devoted. This makes the inapplicability of the Insolvent Corporation act to the present situation quite obvious.

There is one other feature of the bill which deserves mention. It is alleged that many acts *ultra vires* of the corporation were committed at the time of its organization, and that by means of manipulation a much larger sum has been taken and is being taken by the promoter and his assigns for the purchase-money of the land in question than the land was worth at the time of the purchase. The land was conveyed to the cemetery association by one William F. Smith. In the deed of conveyance from him appear, among other things, covenants that the cemetery association should pay over to him and his associates one-half the amounts received by it from the sale of lots, that this amount should be divided into nine thousand shares, transferable like shares in the capital stock of a corporation, and that Smith was likewise to receive a further ten per cent. of the amount realized from the sale of lots, to be paid to him semi-annually, leaving forty per cent. for the support of the cemetery, which amount now turns out to be insufficient. The complainants desire to open up this transaction in order to reduce the purchase-money to what they claim it should have been originally, and to disturb the relations of these land purchase shareholders accordingly. Only a small number of this class of persons has been included as defendants in the bill. I do not see how the rights of the class can be adjudicated upon until all the members of the class shall have been made parties. Besides the small number of land purchase shareholders who are included as defendants there is added the holders of the ten per cent. interest, as it is called.

The bill, therefore, appears to be defective for lack of parties —(1) the attorney-general, (2) the present board of trustees, and (3) the holders of the land purchase shares. In my opinion, they are necessary parties to the litigation. Without them no decree could be made on the present bill which would be of any material value to the complainants. Notwithstanding the consent of the association to the appointment of a receiver of its property, I am unwilling to grant such extraordinary and drastic relief on a bill which appears to be so defective. If the complainants desire to do so, leave will be given to them to amend their bill by bringing in the parties suggested, and to renew the motion, upon notice to all parties.