I will advise a degree in conformity with the views herein expressed.

---

## MARY S. FITHIAN NIGHT SCHOOL AND ACADEMY

### *v.*

## THE COLLEGE BOARD OF THE PRESBYTERIAN CHURCH IN THE UNITED STATES OF AMERICA.

[Submitted November 24th, 1917.  Determined January 8th, 1918.]

1. Under the language of the will under consideration in this case the complainant may be considered as such a school as was properly within its provisions at the time the will took effect, and subsequent changes in the field of work of the defendant corporation could not effect the nature of the trust.

2. Where the defendant corporation was a mere agent of the general assembly, the directions of the general assembly as to payment of funds to the complainant gave complainant a right to demand and receive said funds.

3. Under the circumstances of this case, the attorney-general is not a necessary party thereto.

---

On final hearing on bill to enforce a trust.

*Mr. J. Ogden Burt* (with whom was associated *Mr. Walter H. Bacon*), for the complainant.

*Mr. William Huck, Jr.,* for the defendant.

LEAMING, V. C.

By this suit complainant seeks a decree directing defendant to account and to pay to complainant the net income arising

from a certain fund which has come to the hands of defendant pursuant to the following provisions of a joint will made by Artemesia K. Van Meter and Martha J. Van Meter, the survivor of whom died March 20th, 1900:

> "The rest of our property both real and personal to go to the Boards of the Presbyterian Church, to be used in Home Missions, Church erection and Aid for Colleges, in the bounds of the West Jersey Presbytery, the interest only to be used."

In a suit brought in this court in 1902 to construe this provision of that will it was established to the satisfaction of the court that testatrices intended their residuary estate to go to three of the Boards of the Presbyterian Church known respectively as The Board of Home Missions, The Board of the Church Erection Fund and The Presbyterian Board of Aid for Colleges and Academies, to the end that the interest of the funds should be devoted to the uses indicated within the bounds of the West Jersey Presbytery. It was also there determined that each of the three boards should receive possession of one-third of the residuary estate. See *Harris* v. *Keasbey,* |53 *Atl. Rep.* 555.

Pursuant to the decree entered in that suit one-third of the fund—$4,051.66 in amount—was paid to each of said boards. The Presbyterian Board of Aid for Colleges and Academies was incorporated under that name in 1883; in 1905, by amendment to its certificate of incorporation, its corporate name was changed to the College Board of the Presbyterian Church in the United States of America. By that name it is made defendant herein.

Complainant is a corporation of this state incorporated under our acts authorizing the formation of corporations which are not for pecuniary profit, and conducts a night school in the city of Bridgeton under Presbyterian management and control and within the bounds of the West Jersey Presbytery.

Complainant is the only educational institution under Presbyterian management and control within the bounds of the West Jersey Presbytery, and claims to be entitled to receive from defendant at this time the income of the fund referred to.

Defendant now urges, among other things, that the language of the will limits the use of the income to aid for colleges in the bounds of the West Jersey Presbytery. Complainant is not a college.

The decree in *Harris* v. *Keasbey, supra,* was based upon the conclusion that testatrices intended the trust funds to go to the three boards of the Presbyterian church already referred to; whether the words "aid for colleges" were intended to be merely indicative of one of the boards which was to administer the trust or was intended also to be restrictive of the use that board should make of the income does not appear to have been there specifically considered. The uses defined in the will when considered in connection with the testimony then taken appear to have enabled the court to determine the specific boards which testatrices intended to receive and administer their residuary estate; further than that I do not understand the decision to have gone.

It must therefore at this time be ascertained whether the devise and bequest was to defendant corporation in trust to administer the funds in aid of colleges exclusively, within the bounds of the West Jersey Presbytery, or whether the trust comprehended the aid of such educational institutions as were within the field of administrative work of that board.

I am convinced that the latter view must prevail. At the time here in question the corporate name of defendant board, as set forth in its certificate of incorporation, was "The Presbyterian Board of Aid for Colleges and Academies;" a stipulation of facts filed herein discloses that it was commonly called and referred to as "The Board of Aid for Colleges." The evidence also establishes the fact that at that time the work of defendant board included aid for educational institutions other than colleges, and that no college then existed or now exists within the bounds of the West Jersey Presbytery. With these facts in mind it seems impossible to regard the devise and bequest other than as a devise and bequest to the Presbyterian church to be administered as a trust through its three established agencies then commonly known as the Boards of Home Missions, Church Erection and Aid for Colleges. This view will become more ap-

parent when the relation of these several boards to the church at large shall have been more fully considered in connection with other inquiries arising herein. I am accordingly unable to conclude that testatrices intended by the use of the words "aid for colleges" to restrict the use of the income for colleges, as distinguished from such other educational institutions as defendant board was at that time by its organization designed to aid. This view appears to have been entertained by defendant board when the fund was received by it, for thereafter the entire income was devoted to the aid of the West Jersey Academy, an educational institution within the bounds of the West Jersey Presbytery which was in no sense a college, until that institution went out of existence about the year 1910; since that time the income from the fund has not been used.

The scope of the work of defendant board is defined in its original certificate of incorporation. It is there provided:

> "The objects for which it is formed are the securing and receiving money authorized and approved by the General Assembly of the Presbyterian Church of the United States of America. The money and property thus received to be devoted to current expenses or to permanent endowments of struggling institutions of learning, or to the establishment of new institutions, and to defray the necessary expenses of said Board.
>
> "Every institution of learning, as a condition of receiving aid, shall be either organically connected with the Presbyterian Church in the United States of America or shall, by charter provision, have two-thirds of its Board of Control members of the Presbyterian Church."

These charter provisions of defendant were in force at the time the will here in question was made and took effect. It thus will be observed that at that time the authorized field of work of defendant board was not confined to aid of academies and colleges, but included other struggling Presbyterian institutions of learning. Nor do I understand that it is contended that at that time the field of work which defendant board was actively pursuing excluded institutions of learning below the grade of academies.

But in the year 1904 the General Assembly of the Presbyterian Church adopted a "constitution" for defendant board, and shortly thereafter the certificate of incorporation of defendant board was amended to conform thereto.

That constitution provided:

"The name of this Board shall be The College Board of the Presbyterian Church in the United States of America, and the general work shall be such as is indicated by its title. It may aid academies in its discretion in the matter of current support, but shall not seek endowments for such institutions."

The amendments to the certificate of incorporation of defendant board changed the name of the corporation to that above shown, and also amended the section touching its objects as contained in its original certificate to read as follows:

"The objects for which it is formed are the aid and support of the cause of education in colleges, under the auspices of the Presbyterian Church in the United States of America, the assistance in any and all ways of colleges controlled or approved by said Church, the consolidation of old and the establishment of new colleges and the obtaining, holding and using of money and other property for such objects in any legal manner authorized or approved by the General Assembly of said Church. It may aid academies in its discretion in the matter of current support, but shall not seek endowment for such institutions, unless specially authorized so to do by said General Assembly."

It will be observed that by these amendments the work of defendant board has apparently been withdrawn from all educational institutions except colleges and academies.

Accordingly, it is urged by defendant that complainant is an educational institution below the grade of an academy, and in consequence excluded from the benefits of the trust.

Complainant is not a college and it is not clear that complainant can be properly classed as an academy. In complainant's school the branches taught appear to be restricted to reading, writing, grammar, history, geography, bookkeeping, arithmetic and algebra. An academy is defined in *35 Cyc. 813*, as follows: "An academy is commonly understood to mean a school or seminary of learning, holding a rank between a university or college and a common school, in which the arts and sciences in general are taught." The definition given in the *Standard Dictionary* is: "(1) A school intermediate between a common school and a college. (2) Any institution where the higher branches of learning are taught, or where pupils are trained in

some special science or art, as the United States Military Academy; the United States Naval Academy." In *Century Dictionary:* "In the United States, a school or seminary holding a rank between a university or college and an elementary school." In *Black's Law Dictionary:* "In later use, a species of educational institution, of a grade between the common school and the college." In *Graves' Student's History of Education,* chapter 14, consideration is given to the origin and development of academies as educational institutions in Germany, England and America. From that work it would appear that more flexibility could appropriately be given to the word than is indicated by the above-quoted definitions; in conclusion, however, the author states that in the United States, as time passed, academies tended more and more to become preparatory schools for the colleges, instead of finishing schools for the middle classes of society. The text of the work last cited also discloses that the term "academy" embodies not only the idea of a secondary school, but one under private or semi-private auspices. Should it be determined that this devise and bequest cannot be lawfully administered for the benefit of educational institutions below the grade of academies, I incline to the view that such limitation would exclude complainant from its benefits.

But the intention of testatrices, and the consequent nature of the trust imposed upon the fund, must be measured by the conditions which existed at the time the will took effect. In that view the trust must be understood as having included as proper objects of testatrices' bounty such educational institutions as were then within the field of work of defendant board. No subsequent change in that defined field of work can in any way relate to or affect the inherent nature of the trust imposed upon the fund. Such changes are relevant, and only relevant to matters in which complainant's rights are found to be dependent upon discretion or action of defendant board.

What has been said sufficiently defines my views to the effect that complainant is a proper object of bounty under the trust; but leaves for consideration whether complainant has positive rights under the trust which can be enforced by this bill in opposition to the will of defendant board.

Such right as complainant may have to demand the income from the fund here in question arises from action heretofore taken by the General Assembly of the Presbyterian Church. The testimony discloses that in May, 1915, a petition or "overture" was presented to the general assembly, based on a resolution of the West Jersey Presbytery, setting forth, among other things, that complainant's predecessor—complainant was thereafter incorporated—was the only existing educational institution under Presbyterian auspices within the bounds of the Presbytery of West Jersey, and requesting the general assembly to authorize and direct defendant board to pay over to complainant's predecessor the accrued interest on the fund and thereafter apply the accruing interest in the same manner for the purpose of aiding in carrying on the work of the school until such time as the Presbytery of West Jersey should request a different appropriation. That overture was referred by the general assembly to its appropriate committee, which committee made a favorable report thereon as follows:

"That Overture No. 112 from the West Jersey Presbytery, which asks that the Assembly authorize and direct the College Board to appropriate the income of the Van Meter Fund to aid the M. S. Fithian Night School of Bridgeton, N. J., be answered in the affirmative. and, if the legal way be clear, that the board use the income of this Fund for the benefit of the M. S. Fithian Night School at least until other or better use of said Fund within the bounds of said Presbytery shall be found."

That report was adopted by the general assembly.

The evidence adequately discloses the relation between the general assembly and its several boards. In the *Church Manual* (page 8) it is declared: "The General Assembly is the highest judicatory of the Presbyterian Church." At page 96: "The Boards and the Permanent Committees were established by the General Assembly and are subject to its authority." The evidence leaves no doubt that the several boards of the church, though civil corporations, are in the church organization and government mere agencies of the general assembly and subject to its authority.

The situation thus presented discloses a devise and bequest which in its broad and true sense is to the Presbyterian church

under a trust designed to secure the use of the income to the home mission, church erection and educational work conducted by that church through the respective agencies of its general assembly known as its boards. While by the terms of the will the trust funds are "to go to" the several boards the provisions of the will cannot be contemplated as a devise and bequest to the boards except in their several capacities as administrative agencies of the general assembly of the church. In that capacity the boards necessarily take and hold the trust funds for administration under and in accordance with the established rules and tenets of the church; only such an administration of the trust funds can be in accordance with the inherent spirit of the devise and bequest. In this view the trust defined by the will must be deemed to necessarily include and embody a direction that any appropriate orders of the supreme authority of the church touching the administration of the trust fund within the fields defined by the trust shall control its disposition.

It follows that if it be recognized that complainant is an educational institution within the purview of the original trust— as has already been affirmatively shown—and that the general assembly acted within its established powers in directing its board to pay the income to complainant, then complainant by force of the action of the general assembly comes into enjoyment of a positive and definite right which will support its present bill. In such circumstances the attorney-general would not be a necessary party; complainant has become, for the time being, a specific beneficiary under the will.

It is, I think, clear that the general assembly acted within its powers in directing defendant board to apply the income of that part of the trust fund now in the hands of defendant board in aid of complainant. The existence of that power upon the part of the general assembly in no way interferes with or denies to its board the right of exercise of a discretion within the appropriate scope of its work; it is only the exercise of that power that reaches the discretion of the board. Viewing the board as the agency and creature of the general assembly created and appointed by the general assembly for administrative purposes and subject to its authority it seems obvious that when the general

assembly assumes to specifically direct the specific work of the board no power or discretion can be said to exist upon the part of the board to resist or overthrow that direction.

The direction thus given by the supreme authority of the church was for its board to apply the income here in question to the aid of complainant, "if the legal way be clear." The evidence discloses that these qualifying words, above quoted, are usually inserted in similar directions, to the end that the law may not be violated by the directions given.

My conclusion is that the application of the income in the manner directed by the general assembly is in harmony with the trust imposed by testatrices, and that the direction by the general assembly that the income be so applied confers upon complainant the right to receive it and the accompanying right to an accounting and to enforce its payment in a suit of this nature.

I will advise a decree to that effect.