Edward S. Cannon,

*vs.*

George Frank Stephens, William Worthington, Jr., and Donald Stephens, Trustees, and Fiske Warren.

*New Castle, Jan. 25, 1932.*

*Christopher L. Ward, Jr.,* of the firm of Marvel, Morford, Ward & Logan, and *James T. Mullin,* for complainant.

*William F. Kurtz,* for defendants.

*Hugh M. Morris, amicus curiae.*

THE CHANCELLOR: The first ground of demurrer is that the trust described in the bill of complaint is a public charitable trust and that the attorney general, as representative of the State, is a necessary party but has not been joined as a party.

Where a suit is concerned with a public charity, the general rule undoubtedly is that the attorney general as representative of the public is a necessary party, and has the preclusive right to sue. The general rule is not an incident to the charitable nature of the trust. That which supplies the foundation for the rule that suit to establish, protect or enforce a public charity should be conducted by the attorney general as representative of the State, is its public nature. Where the charity is for the benefit of the public at large or a considerable portion of it and the lan-

guage of its creation is such that no particular individuals can be pointed out as the objects to be benefited by it, the necessity of the case requires a holding that the representative of the public is the only party capable of vindicating the public's rights in connection with the charity, for in such case no individual can come forward and point to himself as the designated object of the charity's benevolence. *State v. Griffith*, 2 *Del. Ch.* 392 (*Id.*, 2 *Del. Ch.* 421, appendix on appeal), which presents a charitable devise in trust for "the poor white citizens of Kent County generally * * who by timely assistance may be kept from being carried to the Poor House and becoming subjects thereof," is a typical case calling for the application of the rule.

The complainant contends, however, that this is not a public charity, and, that being so, the rule requiring the presence of the attorney general as a party is not applicable.

I find it unnecessary to determine whether or not the trust now before the court is a public one for charity in order to test the right of the complainant to sue alone. Notwithstanding that a trust may be charitable and may look generally to the benefit of the public, yet, if the terms defining it are such that it is possible to ascertain definite persons and institutions as the recipients of its benefits, such definitely ascertained persons have a status which entitles them to sue without the intermediation of the attorney general. *Ludlam v. Higbee*, 11 *N. J. Eq.* 342; *Dominy v. Stanley*, 162 *Ga.* 211, 133 *S. E.* 345; *Seitzinger v. Becker*, 257 *Pa.* 264, 101 *A.* 650; *Chambers v. Baptist Educational Society*, 1 *B. Mon.* (*Ky.*) 215; *Baptist Church v. Presbyterian Church*, 18 *B. Mon.* (*Ky.*) 635; *Holman v. Renaud*, 141 *Mo. App.* 399, 125 *S. W.* 843; *Mary S. Fithian Night School & Academy v. College Board*, 88 *N. J. Eq.* 468, 102 *A.* 855. In such cases the reason for the rule that the attorney general must sue, viz., that there is no one among the indefinite public who can assert himself to be peculiarly interested as distinguished from others, finds no justifica-

tion in fact. The reason failing, the rule should fail. In order for the attorney general to be alone entitled to enforce a charitable trust there must be "some benefit to be conferred upon, or duty to be performed towards, either the public at large or some part thereof, or an indefinite class of persons." *Old South Society v. Crocker*, 119 *Mass.* 1, 23, 20 *Am. Rep.* 299; *Atty. Gen. v. Clark*, 167 *Mass.* 201, 45 *N. E.* 183. While in *Dickey v. Volker*, 321 *Mo.* 235, 11 *S. W.* (2*d*) 278, 62 *A. L. R.* 858, it was held that the attorney general of the State alone had the right to institute proceedings for the enforcement of the charity there involved, the decision was expressly predicated on the nature of the charity as being for the benefit of the indefinite public. Throughout the opinion there is interspersed a recognition of the principle that if any ascertained individual of the public could show an interest in himself, he would have the right to proceed in his own name to secure an enforcement of the trust. In 11 *C. J., p.* 367, § 86, it is stated that "to entitle a private individual to prosecute a bill in regard to the administration and enforcement of a charitable trust he must * * * be interested, personally and individually, as a beneficiary rather than as a taxpayer or a member of the community, in the uses to which the property is to be put."

The solicitors for the complainant correctly state the result of the authorities when they say, that the attorney general must be a party to enforce the trust only in cases where no member of the public is sufficiently specially interested as to have a right greater than that of the entire public.

In the light of these principles it is apparent that the attorney general is not a necessary party to this cause. The trust whether it be called a public one or not, is manifestly one in which the leaseholders have a direct interest. While the personnel of the class called leaseholders is a shifting one, yet that class as composed at any given time has the right to require that the terms of the trust be faith-

fully carried out. They have the power reposed in them to say whether any alteration or amendment of the trust may be made and to defeat its termination. Furthermore, the rents which they pay are required to be applied first to payment of taxes, next in payment for the land and thereafter to such common uses as in the judgment of the trustees, are properly public as the term is defined in the deed of trust. Certainly the leaseholders have a direct personal interest in this order of application of the rents, which may not be changed without their assent.

The bill charges that the rents are to be applied in a way other than those specified. If so, the leaseholders, for whose benefit the manner of applying the rents is specifically defined, will suffer the consequences of a wrongful application. I am unable to see why the leaseholders are not entitled to assert for themselves, without the intermediation of the attorney general, their right to be protected against an alleged violation of the trust through the proposed diversion of the rents in unauthorized directions.

The conclusion then, under this branch of the case, is that the attorney general is not a necessary party and that the bill is not demurrable because of his absence. In reaching this conclusion, it has not been necessary, as before stated, to consider whether the trust is a public charitable one. This opinion assumes, without deciding, that it is.

The bill not being objectionable on the ground of a defect in parties, it becomes necessary to consider next and finally whether it is objectionable for want of equity. In answering this ground of demurrer, I shall confine the discussion solely to the points made by the demurrants. I understand them to contend that under the terms of the trust deed the trustees have power to create and sell the rent charge against which the bill complains, and that therefore the bill is without equity. This ground of demurrer raises the question of power.

In support of this contention, the demurrants cite the

language of Hon. Nathaniel B. Smithers found reported in 8 *Del. Ch.* 554, 561, appendix, as follows:

> "Before proceeding it may be useful to recur to the status of the Trustee in relation to the estate. It must be remembered that he is not merely vested with the exercise of a power, but that he is clothed with the legal inheritance and has in him all the rights at law which that term imports. That of his own motion he can execute conveyances and do all other acts which an absolute owner can perform subject only to have his conduct supervised and controlled by a Court of Equity. In short he is bound only to a provident administration of the trust, even when he acts upon his own responsibility and if he chooses to consult the Court, and acts in conformity with its order he is always justified. * * * When the trustee has in him the legal estate it carries all its legal incidents and of course when he is seized in fee, the capacity at law of absolute alienation. The exercise of this power is capable of being qualified or restrained only by a Court of Equity and then only when the act done or suffered is a breach of trust."

The quoted language was used by Mr. Smithers in an opinion prepared by him at the request of Chancellor Salisbury who referred certain questions to him which had arisen in connection with the administration of the Potter Charity. If this opinion be accepted as an authority as fully as if it had been pronounced by the Chancellor himself, I am nevertheless unable to draw from it the conclusion which the solicitor for the defendants draws. He makes use of the opinion to sustain the doctrine of what he calls a residuum of power in the trustees to do anything as owners of the fee except that which is expressly denied to them by the terms of the trust; and that where a given power is not denied to the trustee by the trust, as here, it may be exercised as a power lying in the residuum. I do not read the opinion as establishing any such doctrine. When the powers of the trustees as holders of the title are spoken of as being as broad as are the incidents of the holder of a fee, the writer of the opinion is speaking solely with respect to the complexion which the law puts upon it. He takes pains to point out that the manner of the exercise by the trustee of the legal power incident to the legal estate,

is always subject to supervision and control by a court of equity. This is but another way of saying that a court of equity will restrain and confine the exercise of the legal powers so as to keep them within the bounds of the trust. At law the title of a trustee carries all the powers incident to the estate granted; in equity, these powers may be exercised only within the lawful extents defined by the trust. In 26 *R. C. L.* 1372, it is stated as an elementary principle in the law of trusts "that in the execution of a trust, the trustee is bound to comply strictly with the directions contained in the trust instrument, defining the extent and limits of his authority, and the nature of his powers and duties." And in *Murphy v. Delano,* 95 *Me.* 229, 49 *A.* 1053, 1055, 55 *L. R. A.* 727, the trust, whatever it is, is said to constitute "the charter of the trustee's powers and duties. From it he derives the rule of his conduct. It prescribes the extent and limits of his authority."

The doctrine of a general residuum of power for which the defendants contend finds no countenance in the authorities, when a question is made in a court of equity concerning the propriety of a trustee's acts.

In the instant case, the trustees by granting the rent-charge have, it appears to me, run directly counter to the provisions of the trust. If the instrument creating the charge is to be regarded as a mortgage, nothing in the deed of trust can be found expressly authorizing it. Not even an implication in favor of a power to mortgage can be deduced from a power to sell, for there is no general power to sell conferred. Indeed the grant of an express power to sell parcel five, on the principle of *expressio unius est exclusio alterius,* would inferentially deny such a power as to the other parcels, which, with parcel five, are made subject to the charge.

As to the rents, the deed of trust is explicit concerning their application by the trustees. They are to be first applied to taxes and licenses, then to payment of the land which appears to be subject to a mortgage, and then to such com-

mon uses as are public in that they cannot be left to individuals without giving some an advantage over others. I suppose the last mentioned purposes are such as the lease-holders generally would be benefitted by as members of the community, such as water and lighting projects.

This is the order of priority which the trust defines for the application of the rents. Now the instrument which the bill assails thrusts a rent charge ahead of all other claims upon the rents received. It is given first rank in the order of priority. Clearly, therefore, the trustees by their act have amended the trust by altering the manner and order of applying the rents which the trust defines. This they could have done, undoubtedly, if the majority of lease-holders had consented to an amendment of the deed of trust in that particular. In the absence of such amending procedure, their act must be held to be in violation of the express terms of the trust.

This being so it therefore follows that not only is there no implied authority or residuum of power in the trustees to execute the instrument, but there appears to be a positive violation of the terms of expressly defined powers.

The bill charges that the sum realized from the sale of the rent charge was obtained for the purpose of paying obligations owed not by the trustees but by the advancer of the money. If that be so, as of course it must be taken to be on this demurrer, and there was an agreement to that effect, there can be no possible question as to the invalidity of the instrument.

The demurrer should be overruled. Order accordingly.