[Civ. No. 10038.  Second Appellate District, Division One.—July 27, 1936.]

ANTHONY PRATT et al., Appellants, v. SECURITY TRUST AND SAVINGS BANK et al., Respondents.

Arthur E. Briggs and John C. Packard for Appellants.

Newlin & Ashburn and A. W. Ashburn for Respondents.

ROTH, J., *pro tem.*—Plaintiffs as resident taxpayers and members of the public of the City of Los Angeles, and as beneficiaries of a testamentary charitable trust created by the will of Griffith J. Griffith (confirmed by decree of distribution November 12, 1924), suing for themselves and "for and on behalf of the said public and all persons beneficially interested . . . " brought this action in two counts primarily against Security-First National Bank of Los Angeles (hereinafter referred to as bank or trustee), and the City of Los Angeles and members of the board of park commissioners of the City of Los Angeles. According to plaintiffs, the first cause of action is "for declaratory relief to construe and determine the meaning of the trust instrument as contained in the will and declared in said decree of distribution, also to construe and determine the meaning of the said contract of July 25, 1929, by which the City of Los Angeles accepted the said gift in trust for the benefit of the public and bound itself to certain obligations recited therein, and for a declaration of the rights of the several parties plaintiffs and defendants under said written instrument". The second cause of action is "based upon certain alleged breaches of trust by the Security-First National Bank as testamentary trustee and by the Board of Park Commissioners of the City of Los Angeles. The substance of these charges is that the Bank trustee has converted the funds of the trust, has invested the moneys thereof without authorization of any kind either in the trust instrument, by any court of proper jurisdiction, or by any other person beneficiary or otherwise who may give consent, by investment of said trust funds in speculative securities, by purchase

of securities from itself paid for out of said trust funds; that the Bank trustee and the City of Los Angeles have breached and violated the trust in using moneys of said trust funds for the building of buildings not authorized by said trust and contrary to its directions, by usurping the powers and functions of the Advisory Committee named in said trust and authorized and empowered by the trust to advise, suggest, request, instruct, direct and make decisions in all matters and things relative to said trust in the construction of said Hall of Science and Observatory directed to be built with said trust funds and in carrying out the said trust, by expending more moneys upon the construction of the Greek Theatre than the limitation set therefor by the trust, and by constructing buildings with equipment of greatly less cost than the amount directed by the testator and settler to be expended for the building of the Hall of Science and Observatory and the equipment thereof; and the trustee is also charged with bad faith as evidenced by said breaches of trust, by its hostility to the Advisory Committee, and by its concealment and fraud in withholding information of said breaches of trust from the beneficiaries and public.''

The attorney-general of the state, members of the advisory committee, referred to in the foregoing excerpt and provided for in the trust, and a large number of fictitious persons are joined as defendants.

The pertinent portions of the trust created, which plaintiffs require the court to construe, and upon which both causes of action are predicated, are as follows:

''I hereby give . . . all the rest . . . to . . . Bank . . . to be held in trust for the following purposes and uses in relation to the same;

''Said trustee shall proceed with reasonable dispatch soon after the trust estate is transferred and delivered to it, but without sacrificing any part thereof, to collect any mortgages, promissory notes or other securities, as and when they mature, and to sell and convert all of the other trust property into cash, to the end that all of the trust estate shall be converted into cash as soon as the same can be feasibly and safely done.

''The whole of the trust estate and all of the money received or derived from the conversion or reduction of said estate into cash shall be by my said trustee used and expended

by it in the construction of the following halls, buildings and structures: . . .

"I hereby appoint Mayor John T. Jones, W. C. Mushet and Van M. Griffith, all of Los Angeles, California, as an advisory committee, to consult with, assist and aid my trustees in all matters and things pertaining to the construction of the buildings and the carrying out of this trust in accordance with the directions and my wishes hereinbefore given. I direct that my said trustee shall consult with said advisory committee in all matters and things relating to this trust, excepting those relating to the financial management of the trust estate. In following any advice, suggestions or directions of said advisory committee, my said trustee shall be fully protected and released from any liability or obligation which it may assume or incur by reason of the same. My said trustee shall be, and it is hereby fully released and discharged from every and any liability or obligation of any kind or character incident or relating to this trust or any of its actions or things done or suffered to be done in good faith hereunder, or for any losses, damages, or impairment to the trust estate excepting such as may occur from its wilful neglect, default or misconduct; my intention and direction is that said trustee shall not be liable or chargeable for any losses or damages to the trust estate, or for failing to carry out any of the terms, provisions, directions or requests in this trust mentioned, if it shall in good faith and with reasonable diligence and care attempt to execute this trust according to its intents and purposes. In the event of any vacancy in said advisory committee, caused by any reason whatsoever, the remaining members thereof shall have the power to name and appoint another member to fill such vacancy."

On the 25th day of July, 1929, bank, as first party, and City of Los Angeles, as second party, entered into an agreement with reference to the "erection and completion of a Hall of Science and Observatory to be constructed upon Mt. Hollywood in Griffith Park, a public park, the property of the City of Los Angeles . . . " By said agreement, city, as second party agreed: . . .

"4. The second party hereby agrees, at its own cost and expense to construct the proper and necessary approaches, roads and pathways, and to beautify said site by parking

and planting of trees, shrubs and flowers, all of which shall be done in strict conformity with the plans and specifications thereof, adopted by the parties hereto.

"5. The second party agrees that upon the completion of said Observatory and Hall of Science and its equipment in so far as the same may be equipped with the funds provided by the first party, it will accept and thereafter maintain said Observatory and Hall of Science, under reasonable rules and regulations, open to the public at large in conformity with said will and decree, without any charge or admission fee being extracted from any person whomsoever visiting the same.''

In the first cause of action it is alleged:

"That an actual controversy has arisen and now exists between these plaintiffs, the said trustee, the said Board of Park Commissioners, and the said Advisory Committee relating to their respective rights, duties, powers and privileges under the said trust, in that the said parties, plaintiffs and defendants herein, dispute and disagree among themselves concerning the meaning, intent, purposes and directions of said declaration of trust, in the several particulars hereinafter set forth.''

In great detail plaintiff then avers that the advisory committee has been ignored, that the bank and the board of park commissioners, severally and both together, have not any right, power or authority ''to construct any of the halls, buildings and/or structures . . . to make and contract relating to the construction (of the same) . . . without and excepting upon the advice, suggestion, requests, directions and/or decisions of the said Advisory Committee; . . . that . . . trustee disputes the said claims . . . and denies that said trustee is bound to follow the advice (etc.) of said Advisory Committee in any . . . matters . . . relating to said trust . . . ; that trustee claims that it has the sole right without the advice . . . to make any and/or all . . . contracts . . . under the provisions of said trust . . . ''

Other matters are then alleged as to the claims of the advisory committee and plaintiffs, '' . . . that it is the duty of said trustee at all times to keep in mind and/or to have ready for use any and all of the moneys and funds of said trust estate . . . and not to invest the said funds in any securities which may not be liquid so as to provide moneys

at any and all times when the same may be required; and that the said trustee denies that it has any such duty and/or obligation."

Further, "That said Advisory Committee and these plaintiffs claim that it is the right, duty, power and/or privilege of said Advisory Committee to fix the time in a reasonable manner when the moneys of said trust fund shall be used and/or useable and/or to make demand upon the said trustee to pay out any and all such moneys for the said purposes of said trust . . . for the purpose of enabling said Advisory Committee to know what moneys are held for the purposes of said trust that the said trustee, upon demand of the said Advisory Committee, at any reasonable time, has the duty to provide . . . Advisory Committee with statement and/or statements which may reasonably be demanded by it for the said trust purposes . . . "

According to plaintiffs, "The gravamen of this case is a suit to enjoin the Board of Park Commissioners and the Bank trustee from the use and expenditure of the Griffith trust funds for structures not provided for in the trust, and not approved or consented to by the Advisory Committee and for buildings and structures to cost a greatly less sum than the moneys in cash derived by the Bank trustee from the estate. . . .

"The significant point relating to the Park Board's discretion and the right of a taxpayers' suit relating thereto is that by the wrongful and illegal exercise of authority by the Park Board and by the diversion of the trust funds the City and the public will not receive the benefits of the trust, and, it not being in the discretion of the Park Board to use the funds for any other purpose or in any different manner than as provided for by the trust, a taxpayers' suit will lie to prevent an unauthorized and illegal execution of the trust for other purposes than provided for therein."

In the opening pages of their briefs, plaintiffs state: "The question *whether plaintiffs are real parties in interest is the only vital question* involved in this appeal."

The trial court sustained a demurrer without leave to amend, no request to amend was made, and a judgment of dismissal was entered upon its order sustaining the demurrer without leave. Appellants in presenting their right

to maintain this action do so upon two grounds. Using their own language, these grounds are stated as follows:

"Under Point I is urged the right of plaintiffs *to sue as taxpayers* by reason of the special trust accepted by the Board of Park Commissioners for the public and the City of Los Angeles, and because of the violation and breach of said trust by the Board of Park Commissioners in collusion with the trustee to defeat the said trust and the purpose thereof, and because public property is being used for and by the City's contract of July 25, 1929, the City has contracted to burden the taxpayers for the maintenance of the objects of the trust, for which it is urged that a taxpayer has a right to sue to enjoin the City and its Board of Park Commissioners to prevent injury to the public.

"Under Point II appellants urge their rights as beneficiaries of the trust *by virtue of being members of the public at large*. The questions here to be considered are whether this is a charitable trust, and whether the plaintiffs are sufficiently designated or ascertained as beneficiaries thereof. That involves the specific question as to whether plaintiffs are members of the class described in the trust as 'public at large', 'any person' and finally the question of rights of such persons as beneficiaries of the trust to bring suit for the enforcement of same."

We adopt the allegations of fact made by plaintiffs, and their statement of the issues.  ▮  It is thoroughly established in this state that a taxpayer, under certain circumstances, has the right to sue in a representative capacity. (*Nickerson* v. *San Bernardino*, 179 Cal. 518 [177 Pac. 465]; *McConoughey* v. *City of San Diego*, 128 Cal. 366 [60 Pac. 925]; *Warfield* v. *Anglo etc. Bank*, 202 Cal. 345 [260 Pac. 881]; *Mock* v. *Santa Rosa*, 126 Cal. 330 [58 Pac. 826]; *Mines* v. *Del Valle*, 201 Cal. 273 [257 Pac. 530]; *Crowe* v. *Boyle*, 184 Cal. 117 [193 Pac. 111]; *Dunn* v. *Long Beach L. & W. Co.*, 114 Cal. 605 [46 Pac. 607].) These cases establish the principle that a taxpayer can bring a suit only in cases involving fraud, collusion, *ultra vires*, or a failure on the part of a governmental body to perform a duty specifically enjoined.

It is agreed by all parties hereto that under the charter provisions of the City of Los Angeles, the board of park

commissioners has the exclusive right to deal for the city with reference to park affairs. (City Charter, prior to 1925, art. XII, subds. c and d of sec. 118, sec. 119 [Stats. 1911, p. 2112]; *Estate of Coleman,* 167 Cal. 212 [138 Pac. 992, Ann. Cas. 1915C, 682]; *Estate of Robinson,* 63 Cal. 620; *O'Melveney* v. *Griffith,* 178 Cal. 1 [171 Pac. 934].) Indeed, in the case of *O'Melveney* v. *Griffith, supra,* which was a taxpayers' suit involving this identical trust plan projected prior to the death of the trustor, it has been so decided.

█ It follows, therefore, that plaintiffs in order to maintain their suit as taxpayers must aver fraud, collusion, *ultra vires* or failure to perform a duty specifically enjoined upon the board of park commissioners. There are no averments in either the first or the second cause of action even remotely suggesting any of these elements. The averments of the first cause of action are confined, almost entirely, to a recital of facts showing that the advisory committee has been ignored by both the city and the bank. It is alleged, " . . . that the said Advisory Committee and these plaintiffs claim that the said trustee and/or the said Board of Park Commissioners and/or the said City of Los Angeles is wholly without right and/or authority to use any moneys and/or any of the said trust fund of the said trust estate for the said purpose without the approval and/or consent of the said Advisory Committee".

The terms of the trust with reference to the advisory committee have heretofore been excerpted, and an analysis of the functions of the advisory committee demonstrates that such duties as may have been prescribed for the committee were wholly advisory, and binding upon no one. It is also clear that the opinion of said advisory committee could not, under any circumstances be binding upon the board of park commissioners. The city could not accept the provisions of a trust which would substitute a committee appointed by the trustor in the place and stead of the board of park commissioners, provided for by the city charter. (*O'Melveney* v. *Griffith,* 178 Cal. 1 [171 Pac. 934].)

The second cause of action alleges no fraud, no collusion, no *ultra vires,* nor failure to perform a specifically enjoined duty. The allegations thereof are directed against the trustee· "That the said trustee has violated and breached the said trust and has misled and deceived and concealed the

said violations and breaches of said trust from the beneficiaries of said trust, the said Advisory Committee, the said Attorney General, the Superior Court of Los Angeles County, the City of Los Angeles, the Board of Park Commissioners of the City of Los Angeles, and these plaintiffs in that the said trustee has repeatedly during all times herein mentioned since it became trustee as aforesaid made to said persons, defendants and others numerous representations, to-wit: . . ."

The only allegation remotely suggesting even inertia on the part of the board of park commissioners in the performance of their duties is:

" . . . that the said City of Los Angeles and the plaintiffs and other citizens and taxpayers of the City of Los Angeles and the members of the public, are the beneficiaries of said trust, and that by reason of the aforesaid breaches of trust and of the failure, neglect and refusal of the said defendants, the Attorney General, the City of Los Angeles, the Board of Park Commissioners, and each of them, to proceed against the said trustee to require from it an accounting and/or to hold the said trustee to account and/or liability for its violations and breaches of the said trust aforesaid, the plaintiffs and the other beneficiaries of the said trust are and will be injured in the sum of moneys diverted from the purposes of said trust and converted to said trustee's own use and benefit as aforesaid, and are and will be injured by being deprived of the buildings directed by the trustor to be constructed as aforesaid and by being deprived of the use and benefit of said buildings; and that plaintiffs have no other adequate, speedy and complete remedy at law than as alleged and prayed for herein."

On the facts alleged, we have no doubt that plaintiffs cannot state a cause of action in themselves by bringing a representative taxpayers' suit. As stated in *Dunn* v. *Long Beach L. & W. Co.*, 114 Cal. 605, 609 [46 Pac. 607, 608]:

"We do not think that the complaint states facts sufficient to constitute a cause of action, or to justify the plaintiff in bringing it.

"It is no doubt, under the authorities, frequently difficult to determine whether or not in a given case a person merely in his own capacity as citizen or taxpayer can maintain an action by which he seeks to control the adminis-

tration of municipal government, and put himself in the place of public officers selected for the purpose of such administration. The cases cited by appellant are mostly actions brought by taxpayers directly against public officers to restrain them from increasing the burden of taxation by levying or enforcing taxes which could not be legally imposed. The rule is that the municipality, through its governing body, has control of the property and general supervision over the ordinary business of the corporation; and there would be utter confusion in such matters if every citizen and taxpayer had the general right to control the judgment of such body, or usurp the office. Where the thing in question is within the discretion of such body to do or not to do, the general rule is that then neither by *mandamus, quo warranto,* or *other judicial proceeding,* can either the state or a private citizen question the action or nonaction of such body; nor in such cases can a private citizen rightfully undertake to do that which he thinks such body ought to do. It is only where performance of the thing requested is enjoined as a duty upon said governing body that such performance can be compelled, or that a private citizen can step into the place of such body and himself perform it. If, therefore, in the case at bar it was not a duty enjoined upon the board of trustees of the city of Long Beach to bring an action similar to this present action brought by appellant, then we need not discuss actions concerning municipal affairs—which right is founded to a great extent upon necessity, and the want of any other proper party plaintiff. And the proposition that it was a duty enjoined upon said trustees to bring such an action cannot be maintained.''

We now approach the question whether plaintiffs, as beneficiaries of a charitable trust, i. e., as ''members of the public'', can state a cause of action in themselves as such.

■ It is generally established that a shifting use or uncertainty of beneficiaries is of the very essence of a charitable trust. (*People* v. *Cogswell,* 113 Cal. 129, 136 [45 Pac. 270, 35 L. R. A. 269] ; 2 Bogert Trusts and Trustees, p. 1094, sec. 362; *Collier* v. *Lindley,* 203 Cal. 641, 652 [266 Pac. 526] ; *Estate of Willey,* 128 Cal. 1, 12 [60 Pac. 471]; *Tincher* v. *Arnold,* 147 Fed. 665, 670 [8 Ann. Cas. 917, 7 L. R. A. (N. S.) 471]; *MacKenzie* v. *Trustees of Presbytery of Jersey City,* 67 N. J. Eq. 652 [61 Atl. 1027, 1033, 3 L. R. A. (N. S.) 227].)

It is conceded in this case that the trust here involved is a charitable trust. ■ It is also generally established, and has been accepted as the law in this state, that the primary right to enforce a charitable trust resides in the attorney-general. (*People* v. *Cogswell*, 113 Cal. 129 [45 Pac. 270, 35 L. R. A. 269] ; *O'Hara* v. *Grand Lodge, etc.*, 213 Cal. 131 [2 Pac. (2d) 21] ; *Dickey* v. *Volker*, 321 Mo. 235 [11 S. W. (2d) 278, 62 A. L. R. 858] ; *Smith* v. *Thompson*, 266 Ill. App. 165, 168.) In *Dickey* v. *Volker, supra*, page 281, it is said: ''An individual member of the public has no vested interest in the property or funds of the trust. In common with other members, he has an interest in the charitable use. He has no right of action for the mismanagement or misuse of the fund. Any action on this account must be taken by the Attorney General as the representative of the public. . . .

''In *Stearns* v. *Newport Hospital*, 27 R. I. 309, loc. sit. 315, 316 [62 Atl. 134, 8 Ann. Cas. 1176], in ruling on the right of one of the plaintiffs to maintain the suit, it was said: 'As a citizen and taxpayer he has no standing in this cause. The trust was not intended to benefit him by diminishing his private charities or public burdens. Incidentally it may have that result, but the intention of the founder was to increase the comfort of the poor and sick, not to substitute his aid for the benefits which they could already claim under the law. . . . The trust is a public one, and the attorney-general is the proper person to represent the public in any judicial inquiry into the conduct of the trustees in administering it. . . . 'This duty of maintaining the rights of the public is vested in the Commonwealth, and it is exercised here, as in England, by the attorney general.' ''

■ It is admitted by the parties hereto that the City of Los Angeles became a secondary trustee and that the board of park commissioners is the controlling administrative authority within the city for the purpose of the acceptance of the trust: (Los Angeles City Charter, Art. XVI, Sec. 172, subds. 1 and 2 [Stats. 1925, p. 1082].) Under such circumstances, the secondary trustee has the primary right of action to enforce the provisions of the trust. (*Cannon* v. *Stephens*, 18 Del. Ch. 276 [159 Atl. 234, 236, 237] ; *Attorney-General* v. *Clark*, 167 Mass. 201 [45 N. E. 183] ; *Fithian Night School* v. *College Board*, 88 N. J. Eq. 468, 475 [102 Atl. 855] ; *Appeal of Fidelity etc. Co., Exrs.*, 99 Pa. St. 443, 458; *North-*

*western University* v. *Wesley Memorial Hospital,* 290 Ill. 205 [125 N. E. 13, 19] ; *First Baptist Church* v. *Robberson,* 71 Mo. 326, 333; *Bliss* v. *Linden Cem. Assn.,* 81 N. J. Eq. 394 [87 Atl. 224, 225] ; *Cabe* v. *Vanhook,* 127 N. C. 424 [37 S. E. 464] ; *Trustees of Emory & Henry College* v. *Shoemaker College,* 92 Va. 320 [23 S. E. 765].)

The fact that the attorney-general and the members of the board of park commissioners are joined as parties defendant is of no import. (*Dickey* v. *Volker,* 321 Mo. 235 [11 S. W. (2d) 278, 62 A. L. R. 858] ; *Smith* v. *Thompson,* 266 Ill. App. 165, 168; *Asplund* v. *Hannett,* 31 N. M. 641 [249 Pac. 1074, 58 A. L. R. 573].)

If there were any facts alleged showing fraud on the part of the board of park commissioners, or showing that the board of park commissioners with full knowledge of the alleged fraud of the trustee was acting in collusion with the trustee, we would have a different question to decide, but there are no such allegations. There is not even a direct allegation that the board of park commissioners had knowledge of the facts concerning the alleged maladministration of the trust by the trustee, or that the board of park commissioners having knowledge of the facts had not acted for the ''members of the public''.

█ The allegation heretofore quoted that ''plaintiffs . . . are the beneficiaries of said trust, and that by reason of the aforesaid breaches of the trust and of the failure, neglect *and refusal of the said defendants . . . and each of them, to proceed against said trustee, or to require from it an accounting* . . . for its violations and breaches of the trust aforesaid . . . is not an allegation of knowledge, or an allegation of nonaction. These are mere recitals. (*Silvers* v. *Grossman,* 183 Cal. 696, 700 [192 Pac. 534] ; *Harron, Rickard & McCone* v. *Wilson, Lyon & Co.,* 4 Cal. App. 488, 495 [88 Pac. 512] ; *People* v. *Jones,* 123 Cal. 299, 301 [55 Pac. 992] ; *Johnson* v. *Fletcher,* 97 Cal. App. 153, 155 [274 Pac. 1001] ; 21 Cal. Jur., p. 41, sec. 22.)

We are of the opinion that plaintiffs have stated no cause of action against any of the defendants, and that the judgment sustaining the demurrer of defendant bank without leave to amend, in view of the fact that there was no request to amend, was proper. Said judgment is therefore affirmed.

Houser, P. J., and Doran, J., concurred.