## ATTORNEY GENERAL *vs.* ALBERT BUTLER & others.

Worcester. October 4, 5.— 18, 1877. ENDICOTT & LORD, JJ., absent.

A testator by his will gave $500 to " the trustees of the high school in D. or their successors in office," " to be applied by said trustees to the advancement of education in said high school." The testator died in 1850, and the trustees invested the fund. The high school was maintained by a voluntary association formed in 1846, acting through trustees, which at that time built, in accordance with an agreement with the inhabitants of the town of D., an additional story upon their new school house " to be used for a select school and other purposes in such manner as not to incommode" the school district. In 1846 or 1847 the association employed teachers, caused to be kept in the building a private select school, in which were taught the branches of education usually taught in high schools of that time, charged tuition fees which mainly supported the school, and continued to keep the school in substantially the same manner during some part of every year from 1847 until 1866. In 1866, the town established a high school under the Gen. Sts. *c.* 38, § 2, and the association at the same time discontinued its school, and from that time annually until 1875 leased its upper story and hall to the town, at a rent of $80, for the purpose of keeping a high school, reserving the right to use it for other purposes not inconsistent therewith. In 1875, the trustees, acting under a vote of the association, expended $300 out of the fund given by the testator, being the only appropriation of the fund made, and $100 additional, in necessary repair of the hall for the use of the school, the association acting in good faith and in the belief that it was thus carrying out the donor's intention. The association had since leased the hall to the town at an annual rent of $100, which was a reasonable rent, with the understanding that the association should restrict its use of the same, when not needed by the school, to lectures and musical rehearsals, the trustees, though they never so stated to the town, considering it less than its rental value, but preferring to so rent it for the advancement of education in the town rather than at a higher rent for other purposes. *Held*, on an information in equity, at the relation of the town, to compel the trustees to pay over the fund, that, even if the trust was a public charity, no ground was shown for controlling the discretion of the trustees, by compelling them to make an immediate expenditure of the mod-

erate sum remaining in their hands or of the rent to be received by them annually from the town, rather than to allow the fund to accumulate to be applied as future necessities or contingencies might arise ; and that the town should pay the costs of the information.

INFORMATION IN EQUITY by the Attorney General, at the relation of the inhabitants of the town of Douglas, alleging that Ezekiel Wood, a wealthy and benevolent citizen of the town, having at heart the interest of education, in 1849, signed and delivered to Albert Butler and others, all of Douglas and known as and called the trustees of the high school in Douglas, the following agreement in writing :

" Douglas, Mass., Nov. 13th 1849. For value received I promise and agree shall be paid out of my estate to the trustees of the high school in Douglas or their successors in office the sum of five hundred dollars, in the following manner, by my executors or administrators after my decease, as follows, to wit: One hundred dollars in one year after the appointment of said executors or administrators, and one hundred dollars per annum for the four successive years next thereafter, to be applied by said trustees to the advancement of education in said high school. And in case said school should not be kept the term of one whole year together during the five years in which said payments are to be made as aforesaid, then in that case this note, promise and agreement is to become null and void, and said payments become forfeited and go into my estate, to be administered by my said executors or administrators according to law and my will."

The information then alleged that by his last will, executed a few days afterwards, he provided as follows :

" It is my will that all my just debts and funeral charges be paid and discharged, by my executors hereinafter named and appointed, out of my estate, as soon as conveniently may be after my decease, including the payment of one certain note I have given to the trustees of the East Douglas High School in said Douglas, provided the stockholders and trustees are entitled thereto by complying with the terms and conditions of said note, and not otherwise."

The information also alleged that, before the making of the agreement and will, a high school had been and then was maintained in Douglas, by voluntary contributions of its citizens,

which was kept in a building owned in whole or in part by the stockholders mentioned in the will; that the sum of $500 was paid over by the executors of the will to the trustees named and was invested by them; that before the year 1866 the trustees expended several sums in the advancement of education in the high school in question; that in 1866 the high school was discontinued, and the town, established a public high school under the Gen. Sts. *c.* 38, § 2; that the trustees had not expended any of the fund for the support of a high school, nor for the benefit of the town, since 1866; that the fund in 1875 amounted to $422.32, and in that year the trustees expended a large portion of that sum in repair of the school building, owned by them, which they had leased to the town at its full rental value, the town receiving no benefit thereby and the expenditure not being for the advancement of education; and prayed that the trustees might be decreed to make good the sum so expended by them and to apply the portion of the fund unexpended to the advancement of education in the public high school of the town or otherwise.

The case was heard and reserved, by *Endicott*, J., upon the information, answer, report of a master and an agreed statement of facts, for the determination of the full court, and is stated in the opinion.

*W. S. B. Hopkins*, for the Attorney General.

*F. P. Goulding, contra.*

GRAY, C. J.    This case has no merits.    The money was given to " the trustees of the High School in Douglas or their successors in office," " to be applied by said trustees to the advancement of education in said high school."    The meaning of " high school " is well settled, in the laws and usages of the Commonwealth, to be a school in which higher branches of learning are taught than in the common schools.    See Gen. Sts. *c.* 38, §§ 2, 3.    The object of the testator was declared in general terms to be the advancement of such education in the town in which he lived, but he left the manner in which the fund should be applied to the discretion of the trustees.

The material facts, as they appear by the master's report, and by the allegations of the answer, which are admitted to be true, except so far as they are modified by the report of the master, are as follows:

The testator died in 1850. The voluntary association, of which those to whom the fund was given and the defendants as their successors were elected trustees, and of which the testator in his lifetime was a member, was formed in 1846, by several citizens of Douglas, for the purpose of entering into an agreement with the inhabitants of the ninth school district in that town, " to build a second or additional story upon the schoolhouse then about to be built by said inhabitants, with a view to use said additional story for the purpose of affording to the youth of that community greater facilities for obtaining a higher literary education than could be obtained in the public town school ; this object to be effected by means of a select private school, to be kept in said second or additional story ; " and the association, by agreement with said inhabitants, accordingly built at an expense of $825 such a story upon their new schoolhouse, receiving from them a deed conveying the right to build and maintain said story according to the terms of the agreement, " to be used for a select school and other purposes in such manner as not to discommode said district."

"Immediately after the organization of said association and the completion of said building, in 1846 or 1847, the said association employed teachers, and caused to be kept in said building a private select school, which was attended by scholars resident in Douglas and in other towns near to Douglas. A tuition fee was charged and paid by the scholars attending said school, and the school was mainly supported by the proceeds of the tuition fees paid by scholars attending it. In said school were taught the branches of education usually taught in grammar schools or high schools of that time. Said school continued to be kept at the same place, under the direction and control of said association, and to be attended and supported in substantially the same manner as above stated, during some part of every year from 1847 until 1866."

In 1866, the town established a high school under the statutes of the Commonwealth ; and the association at the same time discontinued its school, and from that time annually until 1875 leased its upper story and hall to the town, at a rent of $80, for the purpose of keeping a high school there thirty-six weeks in the year, reserving the right to use it for other pur-

poses not inconsistent with the convenience of the schools kept in the building. In 1875, the trustees, acting under a vote of the association, expended the sum of $300 out of the fund given by the testator and $100 additional, for the purpose of repairing and fitting up the hall for the use of a school, and which by lapse of time and ordinary use had become necessary to put the hall in proper condition to carry out the original purpose of the association; and the association and the trustees, in thus appropriating the fund, acted in good faith, and in the full belief that they were thereby carrying out, in spirit and in letter, the purposes and intentions of the donor. The association has since continued to lease the hall to the town, at an increased annual rent of $100, for the same purposes, and with the like restriction and reservation, but with the understanding that the association should not use the room for other purposes so generally as before, but should restrict its use of the same, when not needed by the school, to lectures and musical rehearsals. The master finds that the rent of the premises for the purpose of a school, with the restrictions and reservations aforesaid, was always a fair and reasonable rent, and not below the rental value of the premises; but that the trustees, though they never so stated to the town, considered it less than the rental value, and preferred so to lease the premises for the use of a high school for the advancement of education in the town rather than at a higher rent for other purposes. There has been no other appropriation of the fund than as above stated.

Upon these facts, it is unnecessary to consider whether the trust created by the testator is a public charity or a private trust; for, assuming it, as is contended by the relators, to be a public charity, there is no ground for the information. The use which the trustees have made of the fund is admitted to have been in good faith, and is in our opinion according to the intention of the testator; and there is nothing shown, which should induce the court to control the discretion of the trustees, by compelling them to make an immediate expenditure of the moderate sum remaining in their hands, or of the rent to be received by them annually from the town, rather than to allow the fund to accumulate to be applied as future necessities or contingencies may require.

The case is one to which the words of Lord Hardwicke are peculiarly applicable: " This then being an unnecessary information, and in contradiction to the right, the relators must pay the costs thereof. Nothing should be more discouraged than the bringing informations colorably for the benefit of a charity, but contrary to the real charity." *Attorney General* v. *Smart*, 1 Ves. Sen. 72. " The main object of having a relator," said Lord Gifford, " is to secure to the defendants the costs of the information, in case it should turn out that the information was improperly filed." *Attorney General* v. *Vivian*, 1 Russ. 226, 236. *Information dismissed, with costs.*