S. J. SARKEYS, Jr., Deceased, and Kenneth A. Sarkeys, Non-Intervening Visitor [Appellant],

v.

INDEPENDENT SCHOOL DISTRICT #40, CLEVELAND COUNTY, Oklahoma, for itself and for all other members of that class constituting beneficiaries of the Sarkeys Foundation, and Sarkeys, Inc., an Oklahoma Corporation, Sarkeys Foundation, an Oklahoma Charitable Corporation, Sabine Corp., a Louisiana Corporation, Verlan W. Harrell, Bill Edwards, Bobby D. Armstrong, Dan Savage, A. R. McCurley, Emmett M. Charles and Thomas F. McIntyre, Appellees,

State of Oklahoma ex rel. Larry Derryberry, Attorney General of the State of Oklahoma, Intervenor.

No. 53322.

Supreme Court of Oklahoma.

March 23, 1979.

Lucas & Cate and Lee Cate, Norman, Benedum, Benedum & English and T. R. Benedum, Norman, and Stipe, Gossett, Stipe & Harper, and Gene Stipe, McAlester, by T. R. Benedum, Norman, for appellees, Bill Edwards, Bobby D. Armstrong, Dan Savage, A. R. McCurley and Emmett M. Charles.

Castleberry, Lisle & Kivel and Gene A. Castleberry, Oklahoma City, for appellee, Thomas F. McIntyre.

William C. Anderson, Tulsa, for appellees, Robert S. Rizley, Trustee of Sarkeys Foundation, and Finis A. Crutchfield, Trustee of Sarkeys Foundation and Verlan W. Harrell.

Luttrell, Pendarvis & Rawlinson by Robert L. Pendarvis, Norman, for appellee, Philip C. Kidd, Trustee of Sarkeys Foundation.

John H. Patten, Norman, for appellees, Jack Patten, Charles Nesbitt, Smith Hester, Stanton Young and Frank Seay, Co-Receivers of Sarkeys Foundation.

Turner, Turner, & Green by Charles C. Green, Oklahoma City, for appellees, Dewayne Pitt, Reese Booker, L. M. Nelson, Max W. Barnes, G. Lyndell Buck, Ruth Ann Harris Edwards, Dewight Mitchell, Jerry Hines, Michael Hopkins, Flora Latshaw, Debbie Ogle Davis, Noami Snowden, Ben Gray, Allen Wilwhite, John Thomas, Richard Veal, Harry Goeble and the Sarkeys, Inc. Profit Sharing Trust.

Jopling, Blankenship & McKee by William A. Berry and G. T. Blankenship, Oklahoma City, and Spradling, Stagner, Alpern, Friot & Jones by Delmer L. Stagner, Oklahoma City, for non-intervening visitor [appellant].

Pierce, Couch & Hendrickson, Oklahoma City, and Terry G. Shipley, Noble, and Philip Warren Redwine, Norman by John R. Couch, Oklahoma City, for appellee, Independent School Dist. # 40, Cleveland County, Oklahoma.

Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for appellees, Sarkeys, Inc. and Sabine Corp.

Watson, McKenzie & Moricoli by Gregory L. Mahaffey, Oklahoma City, for appellee, Sarkeys, Inc.

Ben L. Burdick, and Gary A. Bryant, Oklahoma City, for appellee, Sabine Corp.

Lee B. Thompson, Oklahoma City, and Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, by Lee B. Thompson, Oklahoma City, for appellee, Verlan W. Harrell.

Kerr, Davis, Irvine, Krasnow, Rhodes & Semtner, and Francis S. Irvine, Oklahoma City, and Monnet, Hayes, Bullis & Edwards, and John T. Edwards, Oklahoma City, and

HODGES, Justice.

An appeal was lodged by S. J. Sarkeys, Jr. and Kenneth A. Sarkeys, non-intervening parties appearing as purported visitors, "appellants," the lineal descendents of S. A. Sarkeys, the founder of Sarkeys Foundation, a charitable corporation,[1] from the judgment of the District Court approving the settlement of the case in the trial court by the parties of record, and the Attorney General of the State of Oklahoma, Larry Derryberry, as intervenor. S. J. Sarkeys, Jr. died after the appeal was commenced. Kenneth A. Sarkeys, the nearest relative of the founder, has displaced his father, S. J. Sarkeys, Jr., as visitor of the Foundation.

---

1. Sarkeys Foundation is an Oklahoma charitable corporation organized exclusively for religious, charitable, scientific and educational purposes pursuant to 18 O.S.1971 § 541 *et seq.*

This proceeding was instituted by Independent School District No. 40, Cleveland County, Oklahoma, [Class] as a class action on behalf of itself and all of the beneficiaries of Sarkeys Foundation on August 4, 1977. The action was brought against Sarkeys, Inc., Sarkeys Foundation, an Oklahoma charitable corporation, Sabine Corporation, a Louisiana corporation, and Verlan W. Harrell, Bill Edwards, Bobby D. Armstrong, Dan Savage, A. R. McCurley, Emmett M. Charles, and Thomas F. McIntyre. Verlan W. Harrell, Thomas T. McIntyre, Robert Rizley, Finis Crutchfield, and Philip Kidd constituted the Board of Trustees of Sarkeys Foundation. Sarkeys, Inc., is an operating oil and gas company, the stock of which prior to April 29, 1976, constituted the principal asset of Sarkeys Foundation. Bill Edwards, Bobby D. Armstrong, Dan Savage, A. R. McCurley, and Emmett Charles, along with Verlan W. Harrell, were shareholders of Sarkeys, Inc.

Sabine Corporation entered into contracts for the purchase of Sarkeys, Inc., stock from its shareholders in August, 1977. The principal transaction complained of by the Class was a sale in April, 1976, of approximately 81.8% of the Sarkeys, Inc., stock held by Sarkeys Foundation to Sarkeys, Inc. It was contended that the sale to Sarkeys, Inc., by the Foundation constituted an act of indirect self-dealing.

At the request of the visitors, on October 13, 1977, the Attorney General of the State of Oklahoma intervened as a party plaintiff requesting a determination by the District Court of the propriety of certain transactions involving Sarkeys Foundation and its properties.

Extensive discovery, including interrogatories and depositions, many of which were witnessed in person by S. J. Sarkeys, Jr., was conducted. Neither S. J. Sarkeys, Jr. nor Kenneth A. Sarkeys made any effort to intervene or become a party to the action during the pendency of the litigation.

A Joint Application For Approval of Compromise Settlement was filed by the Class, the Attorney General, the individual and corporate defendants, the Trustee of Sarkeys Foundation, and the Co-Receivers of Sarkeys Foundation who had been appointed on March 16, 1978.

S. J. Sarkeys, Jr. and Kenneth Sarkeys filed an Objection to Approval of Proposed Settlement and appeared in person, as well as by and through counsel. The District Court made no finding that the objectors, S. J. Sarkeys, Jr. and Kenneth A. Sarkeys, had any right, title, interest or standing to file such objection, but permitted them to be heard to inform the District Court as to whether the settlement agreement should be approved.[2] No motion to intervene was filed by the visitors. A verbal motion to dismiss the objection was overruled.

The court heard and considered testimony and evidence offered in support of the joint application of settlement including the testimony: of Co-Receivers; of the appraisers employed by the Co-Receivers for the purpose of evaluating the assets and liabilities of Sarkeys, Inc.; and of the independent auditors employed by the Co-Receivers for the purpose of reviewing the financial transactions and financial statements of Sarkeys, Inc. The court reviewed and took evidence and expert testimony concerning the attorneys' fees to be paid by the selling shareholders of Sarkeys, Inc. to the counsel of record for Independent School District No. 40, Cleveland County, Oklahoma. The District Court entered its Journal Entry of Judgment approving the settlement agreement entered into by the parties.[3]

2. ". . . The objectors will be permitted here today solely for the purpose of bringing any matter before this Court with reference to either inadequacy or the appropriateness of this settlement.

"The Court makes no ruling with reference to standing or any other matter of legal connotation. I will simply permit you here as I would anybody by invitation of the Court to make the Court understand, . . . ."

3. The District Court found that the Co-Receivers and Attorney General had advised the court that they considered the sum of $14,500,000 to be paid to Sarkeys Foundation under the terms of the settlement agreement to be fair and adequate in relation to the appraised value of

## I

The decisive issue on appeal is whether "appellant", as visitor of the Sarkeys Foundation, has standing to appeal in the absence of an appeal by the Attorney General. It is argued by appellees that the appeal should be dismissed because: the visitor was not a party or privy to the judgment appealed from; was not aggrieved thereby; did not have a direct pecuniary interest therein; and was not a beneficiary of the trust or a member of the class on whose behalf the action was brought. It is contended by the visitor that the judgment entered by the District Court which approved a settlement of the case by the parties of record should be reversed and the cause remanded for determination on its merits.

■ Before a court of equity may interfere in the administration and enforcement of a charitable trust, its jurisdiction must be invoked by one who has the right to institute an action.[4] A person who is not directly interested in the administration of a trust cannot maintain a legal proceeding to control the actions of the trustees. A private individual must be a party to the trust indenture, the representative of such party, or be interested personally and individually as a beneficiary rather than as a taxpayer,[5] or a member of the community before he may attempt to enforce a charitable trust. The beneficial use is not given to individual beneficiaries in a charitable trust, but is devoted to purposes beneficial to the class or community. Because an individual member of the public has no vested interest in the property or funds of the trust, but rather an interest in the charitable use, he has no right of action for mismanagement of the fund. It is generally held that the Attorney General has a preclusive right to maintain proceedings to protect the trust and to prevent a misuse of property devoted to a public charity.[6] A number of states have statutes which expressly provide that the Attorney General may enforce charitable trusts.[7]

■ In Oklahoma, the authority of the Attorney General to enforce charitable trusts as *parens patriae* is derived from the common law and inferred from the statutory language of 60 O.S.1971 § 175.18(B) which requires notice to the Attorney General and provides the Attorney General may intervene in an action concerning performance of a charitable trust. It has long been recognized at common law that the Attorney General has the duty of representing the public interest in securing the enforcement of charitable trusts.[8] The source of this power was discussed by *3 Blackstone, Commentaries 427* as being based on the premise that:

> "The king, as *parens patriae*, has the general superintendence of all *charities*; which he exercises by the keeper of his conscience, the chancellor. And therefore, whenever it is necessary, the attorney general, at the relation of some informant, (who is usually called the *relator*)[9]

the assets and liabilities of Sarkeys, Inc., as of April 29, 1976. The court further found the settlement to be fair, just, and equitable and in the best interests of Sarkeys Foundation and its beneficiaries.

4. *Parsons v. Walker, 28 Ill.App.3d 517, 328 N.E.2d 920, 926 (1975).*

5. *Pratt v. Security Trust & Savings Bank, 15 Cal.App.2d 630, 59 P.2d 862 (1936); Cannon v. Stephens, 18 Del.Ch. 276, 159 A. 234, 237 (1932).*

6. *Nicolson v. Citizens & Southern Nat'l Bank, 50 F.Supp. 92, 98 (S.D.Ga.1943).*

7. See A. W. Scott, "Scott on Trusts" § 391 pp. 3003, 3004 Little Brown & Co. 1977 Supp. for jurisdictions with express statutory provisions.

*Agan v. United States Nat'l Bank, 227 Or. 619, 363 P.2d 765, 769 (1961).*

8. See *State v. Taylor, 58 Wash.2d 252, 362 P.2d 247, 249 (1961), 86 A.L.R.2d 1365 (1962)* for case construing statutory language similar to that of 74 O.S.Supp.1978 § 18(b).

9. A relator is defined in *Brown v. Nat'l Home Foundation, 162 Cal.App.2d 513, 329 P.2d 118 (1958), 75 A.L.R.2d 427, 3 L.Ed.2d 352 (1959).*

"A relator is a party in interest who is permitted to institute a proceeding in the name of the People or the attorney general when the right to sue resides solely in that official. The term is thus defined in 2 Bouv.Law Dict., Rawle's Third Revision, page 2863; 'At common law, strictly speaking, no such person as

files *ex officio* an information in the court of chancery to have the charity properly established."

Even before the enactment of the Statute of Charitable Uses by the English in 1601, suits were brought by the Attorney General to enforce charitable trusts. Effectuation was based on the theory that the community has an interest in the enforcement of such trusts and the Attorney General represents the community in seeing that purposes of the trusts are properly performed. The rationale for vesting in the Attorney General the exclusive power to begin proceedings to enforce charitable trusts is apparent. The persons affected by such trusts are usually some or all of the members of a large and shifting class of the public. Many times no specific individual can prove that he will necessarily benefit from the charity. All may be prospective or possible beneficiaries, but no one can be determined to be a certain recipient. Obviously, there is good reason for vesting in a single authority the discretion and power incident to the enforcement of such trusts, rather than in leaving the matter to the numerous, changing, and uncertain members of the group directly to be aided. Prosecution of the proceeding by the Attorney General is also premised on the pragmatic consideration of the reduction of harassment of the trustees by parties who have no direct interest in the trust. If a third party were permitted to sue as a matter of right, the charity could be subjected to frequent, unreasonable and vexatious litigation, the court dockets could become clogged, and the trust assets could be wasted in unnecessary attorney fees.[10]

The office of the Attorney General, as it existed in England, was adopted as part of the governmental machinery in Oklahoma, and in the absence of express statutory or constitutional restrictions, the common law duties attach themselves to the office.[11]

The suit may be brought by the Attorney General or it may be brought by him on the relation of a third person who need not have a direct interest in the enforcement of the trust. Even if the suit is brought on relation of a third person, the Attorney General and not the relator has charge of the conduct of the suit. Although a relator need not have any direct interest in the suit, he is liable for the costs which would otherwise have to be paid by the state. The primary purpose of having a relator is to secure to the defendants the costs of the information in the event it should be improperly filed.[12]

Where a proceeding involving a charitable trust is properly brought by the Attorney General, by the trustees, or by persons having a special interest, a third person may seek to intervene in the proceedings, and it is within the discretion of the trial court to permit such intervention.[13]

It is conceded by the visitor that he requested the intervention of the Attorney General, and that his intervention was proper. It is argued that when the Attorney General agreed to the settlement, he abandoned his duty to prosecute the action, and at that time the visitor became a proper party to perfect an appeal. The visitor argues he has standing to prosecute the appeal in the absence of an appeal by the

a relator to an information is known, he being a creature of the statute of 9 Anne. In this country, even where no similar statute prevails, informations are allowed to be filed by private persons desirous to try their rights, in the name of the attorney-general, and these are commonly called relators.' The attorney general prescribes his own rules for granting such consent and they may be entirely informal."

10. See *Coffee v. William Marsh Rice University, 403 S.W.2d 340 (Tex.1966)*; G. G. Bogert and G. T. Bogert, "The Law of Trusts and Trustees, p. 414, 436 Ch. 21 § 411 (Rev. 2nd ed. 1977).

11. *State v. Kerr-McGee, 516 P.2d 813, 819 (Okl. 1973)*.

12. *Attorney General v. Butler, 123 Mass. 304, 309 (1877)*; G. G. Bogert and G. T. Bogert, "The Law of Trusts and Trustees, p. 414 Ch. 21 § 411 (Rev. 2nd ed. 1977).

13. IV A. W. Scott, "Scott on Trusts," pp. 3012, 3015 § 391 (3d ed. 1967).

Attorney General because he is a party aggrieved by the judgment and a potential beneficiary under the trust. Appellees assert that the visitor is not a member of the class of beneficiaries and is thus precluded from appealing the judgment. We agree. The visitor is precluded on two bases: 1) A settlement agreement in 1965 in which all rights to the estate of S. A. Sarkeys, Jr. were compromised and settled; and 2) The Internal Revenue Code 26 U.S.C. § 4946(a)(1)(D), 26 U.S.C. § 4941(d) precludes the visitor from being a beneficiary of the trust because he is a lineal descendent of the settlor.

Article Five of the Sarkeys Foundation Articles of Incorporation prohibits the corporation from engaging in any transaction, operation or otherwise which is specifically prohibited by the Internal Revenue Code or Regulations. Further, 60 O.S.1971 § 174.2 amends the Articles of Incorporation of Sarkeys Foundation to provide that the Foundation shall not engage in any act of self-dealing which would subject it to tax under § 4941 of the Internal Revenue Code. Therefore, by operation of law, the State of Oklahoma requires that charitable corporations which met the definition of private foundations are deemed to have amended their articles of incorporation to prohibit any act of self-dealing taxable under § 4941 of the Internal Revenue Code. Any grant to lineal descendents would impose a tax upon the Foundation, therefore a grant is prohibited by 60 O.S.1971 § 174.2. Because the appellant-objectors could not receive a grant from Sarkeys Foundation, they cannot be beneficiaries of that Foundation and cannot purport to represent the interests of the beneficiaries.

## II

The precise status of the doctrine of visitation is not pellucid. It appears to be a relic which has not been expressly abolished by statute and in some states has been occasionally recognized by decision. It is not a practical or desirable feature of charitable trust administration unless statutory supervision and enforcement is inadequate.[14]

Under the law of England, where property is given to a charitable corporation founded by the donor, he may reserve or may confer on others a power of visitation. Where property is given to trustees for charitable purposes, rather than to a charitable corporation, there is no such visitatorial power. In the United States it has not been usual for the founder of a charitable corporation to provide for supervision by visitors.[15] In this instance, The Articles of Incorporation of Sarkeys Foundation provided that all powers and purposes of the Foundation are to be exercised by the trustees. Under some circumstances, visitors have been held entitled to sue, but they have no general right to invoke the aid of the court against an improper use of the trust.[16] The settlor of the trust did not reserve the right of visitation, nor did his lineal descendents exercise the right in the sixteen year existence of the trust. The visitors do not have a vested right to maintain the initial action nor to prosecute an appeal.

The general rule, and the rule in Oklahoma is clearly delineated by the syllabus in *Trapp v. Board of Com'rs of Okmulgee County*, 79 Okl. 214, 192 P. 566 (1920):

"The common law limited the right to sue out a writ of error, or to appeal, to those who were parties or privies to the action in which the judgment or decree complained of was rendered, and this rule has been incorporated in most of the statutes regulating the subject; these statutes giving the right of review to any 'party' aggrieved. Under such limita-

---

14. G. G. Bogert and G. T. Bogert, "The Law of Trusts and Trustees," p. 458 Ch. 21 § 411 (Rev. 2nd ed. 1977).

15. IV A. W. Scott, "Scott on Trusts," p. 3015 § 391 (3d ed. 1967).

16. See *Trustees of Andover Theological Seminary v. Visitors*, 253 Mass. 256, 148 N.E. 900 (1925); *Trustees of Putnam Free School v. Attorney General*, 320 Mass. 94, 67 N.E.2d 658 (1946); *State v. Taylor*, 58 Wash.2d 252, 362 P.2d 247 (1961), 86 A.L.R.2d 1365 (1962).

tion third persons, no matter how much they may be prejudiced by the judgment, decree or order, cannot obtain its review by appeal or writ of error. The record on appeal should accordingly show that the appellant or plaintiff in error was a party or privy."

 A party cannot appeal from a decision, however erroneous, which does not affect his substantial rights.[17] Interest in the subject matter of litigation necessary to support the appeal must be a direct and pecuniary interest.[18] Where the rights of innocent third parties are involved and they are not made parties, their rights cannot be determined on appeal.[19]

The facts are clear. The visitors sought the intercession of the Attorney General. He intervened. All parties of record compromised and settled the litigation after extensive discovery. The visitor did not intervene at any time. The authority of the Attorney General to prosecute the litigation was unchallenged until settlement. It is now argued the Attorney General exceeded his authority because the agreement was without consideration.[20] There is no allegation of fraud or collusion concerning the settlement, and in fact, the visitor has filed a motion to confirm the sale.

The Attorney General exercised his duty of *parens patriae,* and intervened in the action involving the charitable trust, Sarkeys Foundation. He had the authority to conduct the litigation. The Attorney General's powers are as broad as the common law, unless restricted or modified by statute. The authority of the Attorney General to settle or compromise the litigation in question, in the absence of fraud or collusion is exclusive.[21]

APPEAL DISMISSED.

**17.** *Baker v. Vadder, 83 Okl. 140, 200 P. 994 (1921).*

**18.** *In re Gray's Estate, 131 Okl. 189, 268 P. 194 (1928).*

**19.** *Town of Buffalo v. Walker, 126 Okl. 6, 257 P. 766 (1927).*

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.

SIMMS, J., concurs in result.

BARNES, J., not participating.

**20.** Consideration is adequately reflected by the agreement of Sabine Corp. to add additional monies to the purchase price to effectuate settlement.

**21.** *State v. Kerr-McGee, 516 P.2d 813, 819 (Okl. 1973).*