Robert F. RANDOLPH, Appellee,

v.

John F. CANTRELL, Individually, and as Trustee of the Tulsa County Employees Retirement Fund, Appellant.

No. 61938.

Court of Appeals of Oklahoma, Division No. 2.

Sept. 17, 1985.

Released for Publication by Order of Court of Appeals Oct. 18, 1985.

Paul F. McTighe, Jr., Tulsa, for appellee.

Susan K. Morgan, Asst. Dist. Atty., Tulsa, for appellant.

MEANS, Judge.

Defendant Cantrell appeals from the trial court's finding reinstating retirement benefits for Randolph. Having reviewed the record and applicable law, we find that the defendant has no standing to bring the appeal when the Board voted not to appeal the ruling. The appeal is dismissed.

Randolph was a deputy county sheriff for Tulsa County from 1955 until 1977. In

1976, Randolph was injured during his employment. After unsuccessful attempts to return to work, he retired in 1977. At that time he applied for and received disability status. The Trustees of the Board found that Randolph was permanently and totally disabled from performing his duties as a deputy sheriff.

In 1978, the Board passed a resolution which required all persons who had been adjudged permanently and totally disabled to submit proof each year as to their continuing disability. This proof was to be supplied at the expense of the disabled person. In 1982, Randolph requested that the annual review be paid for by the Board. The Board determined that the expense was one which was appropriately borne by Randolph. When Randolph refused to pay, his benefits were suspended and he filed suit in district court.

In 1983, the district court ruled that the Board could make a rule which required disabled workers to provide medical evidence annually as proof of their continuing disability. The question of Randolph's continuing disability was not before the court at that time. Randolph did not appeal this ruling.

Subsequently, Randolph presented medical evidence from Dr. Barnes as proof of his continuing disability. The Board refused to accept the report from Dr. Barnes and required Randolph to consult a different doctor. Randolph was examined by a different doctor at the Board's expense and submitted the doctor's report. Although the second report found that Randolph was disabled, the doctor did not use the words "permanently and totally." After receiving the second report, the Board terminated Randolph's disability status and he appealed to district court.

At the hearing in district court, both sides presented evidence as to Randolph's disability. After hearing testimony, the court found that the Board erred in terminating Randolph's disability because there was no evidence that his condition had improved. The court reinstated his benefits and ordered the Board to pay all benefits from the time they were suspended. The Board subsequently voted not to appeal the district court ruling, to reinstate Randolph's benefits, and to pay all those benefits which were due. John Cantrell, individually, and as a Trustee of the Board, has appealed.

The initial question which must be resolved in this appeal concerns Cantrell's standing as an individual member of the Board to appeal the district court ruling. As Randolph notes, the appeal is not by the Board, but by one member of the Board. Both parties agree that the Board did not vote to appeal the case, but instead has paid Randolph all his benefits and continues to pay those benefits. Randolph contends that one member of the Board is without authority to initiate an appeal and that the appeal must be dismissed for lack of standing.

Randolph raised the dismissal issue in his response to the petition in error. Cantrell did not respond to the question in his initial brief, nor did he file a reply brief. Cantrell did not address the issue of standing until this court required him to do so in a show cause order.

Control and management of a county retirement fund is set out in 19 O.S.1981 § 952. Section 952 allows counties to establish a retirement fund and provides that the fund must be administered by a seven member board of trustees. The county treasurer is automatically appointed as treasurer of the fund. However, section 952 does not establish any type of special status for the treasurer, nor does it allow the treasurer to bring an action individually in his own name or in his official capacity as treasurer.

Appeals from actions of the retirement board are governed by 19 O.S.1981 § 962. Section 962 allows any county employee to appeal from a decision of the board. This section does not authorize the employee to sue individual members of the board, but refers to a "decision of the Board." In appealing, the employee must present notice to the "Clerk of the Retirement Board" as well as the district attorney. In the

instant case, the board as a legal entity is clearly not the party which has brought the appeal.

In *Sarkeys v. Independent School District*, 592 P.2d 529 (Okla.1979), the court found that a party had no standing to appeal a decision of the district court when the government official who represented the party at district court had not filed an appeal. In *Sarkeys*, the court was faced with a fact situation involving a charitable trust. At trial, the Attorney General was requested to, and exercised his duty to intervene. The Attorney General then negotiated a settlement and compromise. The court determined that because the Attorney General had not filed an appeal, the appellant had no standing to appeal the decision, stating: "A party cannot appeal from a decision, however erroneous, which does not affect his substantial rights. Interest in the subject matter of litigation necessary to support the appeal must be a direct and pecuniary interest." *Id.* at 536 (footnotes omitted). The court followed the common law rule set out as:

"The common law limited the right to sue out a writ of error, or to appeal, to those who were parties or privies to the action in which the judgment or decree complained of was rendered, and this rule has been incorporated in most of the statutes regulating the subject; these statutes giving the right of review to any 'party' aggrieved. Under such limitation third persons, no matter how much they may be prejudiced by the judgment, decree or order, cannot obtain its review by appeal or writ of error. The record on appeal should accordingly show that the appellant or plaintiff in error was a party or privy."

*Id.* at 535–36 (quoting *Trapp v. Board of Commissioners of Okmulgee County*, 79 Okla. 214, 192 P. 566 (1920)).

In support of his argument that an individual member of the Board has standing to pursue the appeal, Cantrell cites *Glass v. Carmelite Sisters of St. Therese*, 496 P.2d 798 (Okla.1972). *Glass* involved an appeal brought by the county tax assessor. The court stated the general rule that "a dissenting board member may not appeal from a decision of the board of which he is a member." However, the court noted that there is an exception to the general rule where the board is acting as a representative of the public interest in matters entrusted to its determination. Cantrell asserts that the board of trustees of the county retirement fund acts in the public interest similarly to the Board of Taxroll Corrections.

The *Glass* court, citing 68 O.S.1981 § 2461, stated that "taxpayers and county assessors are specifically authorized to appeal from decisions of a county board of equalization." No such statute exists concerning members of a board of trustees for county retirement systems, or for county treasurers. Furthermore, in *Glass*, the Board of Taxroll Corrections was acting to reverse decisions of the county assessor who was a member of the board. As county assessor, Glass was the first line of appeal in challenging an action of the board. In distinguishing the role of the county assessor, the court noted:

The county assessor exercises a judicial function when he determines the taxable status of any property which is claimed to be exempt from ad valorem taxation.... When his decision that any property is not exempt from taxation is contested in the Board of Tax-roll Corrections, his decision is necessarily adversary to the views of the taxpayer.

*Id.* at 800.

Finally, in determining that the county assessor had standing to bring the appeal, the court stated that the action was pursued by Glass in his official capacity as county assessor, and not in his capacity as a member of the board. "Considering the statutory duties that are imposed upon the county assessor in representing the public interest in ad valorem tax assessments we are of the view that it would be contrary to the public interest to deny him the right of appeal." *Id.* at 801. As further support for its finding that the assessor had standing to appeal, the court noted the "heavy

responsibilities in the assessment of property for ad valorem taxes," citing numerous statutory provisions regulating the assessor's duties.

■ In the instant case, Cantrell's position and responsibility as a member of the retirement board is not the same as the county assessor's position in *Glass*. Cantrell's position as a member of the board of trustees is through 19 O.S.1981 § 952. His responsibility as a member of the board of trustees affects only those members of the retirement system. At no time can these duties be considered in the public interest as those of a tax assessor.

■ Clearly an individual member of a governing body does not have the power to institute lawsuits, defend lawsuits, or file appeals in his or her own name. Such a result could create judicial as well as political chaos. The Board of Trustees of the Tulsa County Retirement System in this instance is the designated authority to make those decisions. Cantrell cannot appeal as an individual. His concerns are the Board's concerns and its decisions govern.

Furthermore, Cantrell's argument that the court made its decision based on social security law is without merit. At trial, Randolph presented an analogy to social security law concerning disability retirement. When the Board objected that social security law was not mandatory authority, Randolph and the judge both acknowledged that the authority was merely persuasive.

■ Randolph argued at trial and on appeal, that once disability is affirmatively established by a decision of the Board, a rebuttable presumption exists that the disability continues until the presumption is refuted with testimony that the condition has improved. This presumption can be overcome by evidence. *Patti v. Schweiker*, 669 F.2d 582 (9th Cir.1982). As stated in *Patti*, the claimant still has to prove his or her case; this presumption merely imposes a burden on the Board to come forward with evidence that the condition has changed.

■ At trial, the Board's entire testimony consisted of trying to establish that there were jobs at the sheriff's office which Randolph would be able to perform. There was no evidence presented which showed that his condition had improved since 1978. In fact, the evidence overwhelmingly tended to show that his condition had worsened since he retired and was adjudged disabled. The Board also placed great emphasis on the fact that Randolph had requested to be employed and that he had sought work, attempting to show that this desire to work existed because he was not disabled. There was no evidence of any type which would tend to prove that Randolph's condition had improved since the time when he was adjudged to be permanently and totally disabled.

Because the Board in its official capacity has not brought this appeal, Cantrell has no standing as an individual dissenting member to pursue this action. The appeal is dismissed.

STUBBLEFIELD, J., (sitting by designation) concurs, and BACON, J., specially concurs.

BACON, Judge, specially concurring.

I concur and would go one step further. This appeal is frivolous. I would award attorney's fees to appellee.