480 S.E.2d 72 (1997)
Ann P. NEWMAN, Respondent,
v.
RICHLAND COUNTY HISTORIC PREERVATION COMMISSION, City of Columbia, South Carolina, and County of Richland, South Carolina, Defendants,
Of whom City of Columbia, South Carolina, and County of Richland, South Carolina are Appellants.
No. 24547.
Supreme Court of South Carolina.
Heard February 21, 1996.
Decided January 13, 1997.
*73 James S. Meggs and Thomas E. Ellenburg, both of the Office of the City Attorney, Columbia, for appellant City of Columbia and Larry C. Smith, of the Office of the Richland County Attorneys Office, Columbia, for appellant County of Richland.
D. Cravens Ravenel, of Baker, Barwick, Ravenel & Bender, Columbia, for respondent.
Wayne F. Rush, of the Office of General Services, South Carolina Budget and Control Board, Columbia, for amicus curiae.
FINNEY, Chief Justice:
The diapositive issue in this appeal is whether a member of the governing board of a special purpose district has standing to bring a declaratory judgment action challenging passage by the board of a resolution which the member opposed? We hold the member lacks standing to bring such a suit either in her official capacity or as a citizen and taxpayer, and reverse.
Respondent (Newman) was appointed to a four year term as a commissioner on defendant[1] Richland County Historic Preservation Commission (RCHPC). The RCHPC is a special purpose district created in 1963. 1963 S.C. Acts 69.[2]
In May 1994 RCHPC owned four historic homes in Columbia,[3] and some of their furnishings. Six of the seven commissioners were present at the regularly scheduled May 1994 RCHPC meeting. At this meeting a resolution was introduced and passed by a vote of 4-2. Newman was one of the dissenters. This resolution had two provisions:
(A) That the RCHPC deed two of its properties to appellant City of Columbia (City)[4] and the other two to appellant Richland County (County);[5] and
(B) that the RCHPC dissolve itself.
Newman then brought this declaratory judgment action to declare the property transfers void and the dissolution ineffective. She brought the suit both in her capacity as a commissioner and as a citizen-taxpayer. After County and City and RCHPC answered, Newman moved for summary judgment as did City and RCHPC.[6] The circuit court granted Newman's motion, and denied the other two. Appellants appealed.
On appeal there is no challenge to the circuit court's conclusion that the RCHPC lacks the ability to dissolve itself, an action which can only be achieved by an act of the General Assembly, S.C.Code Ann. § 4-9-80 (1986), or by the Secretary of State in cases of inactive special purpose districts. S.C.Code Ann. § 4-11-290 (Supp.1995). The issue before the Court is whether Newman had standing to bring this declaratory judgment action challenging the propriety of the RCHPC's decision to deed the four properties to the appellants. The circuit court held Newman had standing to maintain this suit *74 both as a RCHPC commissioner and as a taxpayer.
Standing is "a personal stake in the subject matter of a lawsuit." Bailey v. Bailey, 312 S.C. 454, 441 S.E.2d 325 (1994). Newman first alleges standing as a disgruntled commissioner, and relies on Gilbert v. McLeod Infirmary, 219 S.C. 174, 64 S.E.2d 524 (1951). In Gilbert, two trustees of an eleemosynary hospital corporation brought suit to set aside the corporation's sale of certain property to "insiders" at a price far below market value. In addition to alleging improper self-dealing, the plaintiffs alleged irregularities in the procedures surrounding the sale.[7] On appeal, the Court rejected the defendants' contentions that the plaintiffs lacked capacity (not standing) to bring this suit. The Court disposed of this argument by pointing out that the hospital corporation's trustees were analogous to the directors arid shareholders of a corporation, and that under corporate law directors and shareholders were entitled to bring this type of derivative action.
Here, however, the RCHPC is not a corporation, but a "body politic." The proper analogy is not to a corporation and its directors, but to a legislative body and its members. We have been unable to find any case which permits a disappointed legislator to attack a decision of her own body, either through a declaratory judgment or through a direct "appeal" of the decision. See, e.g., Munhall v. Inland Wetlands Comm'n, 221 Conn. 46, 602 A.2d 566 (1992); Randolph v. Cantrell, 707 P.2d 48 (Ok.App.1985); Control Data Corp. v. Controlling Bd. of Ohio, 16 Ohio App.3d 30, 16 OBR 32, 474 N.E.2d 336 (1983); cf., Anders v. South Carolina Parole and Community Corrections Bd., 279 S.C. 206, 305 S.E.2d 229 (1983) (statute denying solicitor right to sue the state reflects rule that governmental employee cannot sue his employer because that is tantamount to suing himself). In Randolph, the court held an "individual member of a governing body does not have the power to institute lawsuits, or file appeals in his or her own name. Such a result could create judicial as well as political chaos." We agree. Further, denial of the right to sue to a member of the governing body does not insulate review of the decision. "It would be improper to consider a member of the Controlling Board as a person "aggrieved" when a decision of the Controlling Board is contrary to his personal opinion or the position for which his vote was cast. Sufficient representation of the public's interest could be provided by a citizen affected by the decision of the Controlling Board and not by allowing a member of the Board to take a partisan position and challenge the outcome." Control Data, supra.
In Munhall, supra, the disgruntled commission member sought both to appeal the commission's decision and to bring a declaratory judgment action. The following discussion, although addressed to the appeal issue, is equally persuasive when applied to the declaratory judgment question:
We have never concluded that individual commission members are aggrieved for the purpose of appealing the decision of the very agency upon which they sit. Inherent in such a state of the law is the notion that the legislative function of any agency, by its very nature, involves the interaction of competing ideas that eventually resolve themselves in a decision that may not satisfy all of the agency's members. This is the essence of the legislative process, a process that should not be compromised by ready access to a supplemental forum for those dissenting members who are disappointed in, the outcome.
We agree and reverse the circuit court's holding that Newman had standing as a commissioner to bring this suit.
We have held that where a governmental employee could not maintain a suit in his official capacity because the posture of the suit was such that he was suing himself, he also could not "proceed with the matter under the guise of appearing as a citizen and tax-payer." Anders, supra; see also McTaggart v. Public Service Comm'n, 168 Mont. 155, 541 P.2d 778 (1975). Anders is dispositive *75 of Newman's alternate standing as a citizen-taxpayer. Accordingly, the decision below is
REVERSED.
MOORE, WALLER and BURNETT, JJ., concur.
TOAL, J., dissents in separate opinion.
TOAL, Justice, dissenting:
I respectfully dissent because I believe Ann Newman had standing to contest the transfers of property by the Richland County Historic Preservation Commission ("Commission"). Moreover, I would find that the Commission lacked the authority to make these transfers.

A. STANDING
The court below was correct in holding that Newman had standing to bring this action. Generally, a private person may not invoke the judicial power to determine the validity of executive or legislative action unless he has sustained, or is in danger of sustaining, prejudice therefrom. Florence Morning News, Inc. v. Building Comm'n, 265 S.C. 389, 218 S.E.2d 881 (1975). Such imminent prejudice must be of a personal nature to the party laying claim to standing and not merely of general interest common to all members of the public. Citizens of Lee County, Inc. v. Lee County, 308 S.C. 23, 416 S.E.2d 641 (1992). However, an exception to this rule exists for ultra vires acts by government officials. For example, we have said that a court will not attempt to control the discretionary powers conferred upon a county board and will not interfere, by means of a taxpayer suit, to restrain the authorities of a county board from the exercise of their discretionary power with regard to the control or disposition of property of the county board in the absence of illegality, fraud, or clear abuse of authority. Owens v. Magill, 308 S.C. 556, 419 S.E.2d 786 (1992) (emphasis added); see also Ex Parte Hart, 190 S.C. 473, 477, 2 S.E.2d 52, 53-54 ("[I]f a county has a cause of action for an injury sustained, which should be enforced for the protection of its citizens or taxpayers, and its governing board unjustifiably refuses to assert such cause of action, any citizen, because of his indirect interest, may sue, in behalf of himself and others similarly situated, the person against whom the cause of action exists, and thereby enforce the rights of the county. In such case it is proper to make the corporation a defendant as trustee for all of its members."), cert. denied, 308 U.S. 569, 60 S.Ct. 82, 84 L.Ed. 477 (1939).
Underlying these decisions on the issue of standing is a balance between two competing policies: citizens' access to a judicial process that addresses their grievances, and the government's interest in judicial economy and freedom from excessive and meritless lawsuits. If citizens were barred from bringing all lawsuits that concern governmental action, then there would be no opportunity to remedy governmental abuse. On the other hand, standing cannot be granted to every individual who is disgruntled by a governmental decision or policy; otherwise, the government would be forced to defend a constant barrage of lawsuits questioning its every move. As with most things, moderation is required. A moderate balance is achieved by granting citizens standing when they bring actions alleging ultra vires acts by a governmental agency, while denying citizens standing to challenge discretionary actions. Thus, I would find that an individual has standing to contest a governmental action if he alleges particularized ultra vires acts by the governmental entity. The complaint cannot be a general assertion of ultra vires action on the part of the governmental actor, but must identify (1) the specific act or acts that have exceeded the actor's authority, and (2) the specific constitutional, statutory, or other law that has been exceeded.
If this were not the rule (and this is what is implied by the majority's opinion), then governmental abuse by the executive and legislative branches of government would be nearly completely immune from review. Our system of government includes checks and balances. As this Court observed at the beginning of this century,
Under a republican government such as ours, sovereignty lies in the people. This sovereignty is delegated by the people under the Constitution to the three departments *76 of governmentexecutive, judicial and legislativewhich are co-ordinate and independent, and it must follow that each is supreme as to matters within its , own sphere of action, subject alone to the limitations, checks, and balances provided in the Constitution.
State ex rel. Rawlinson v. Ansel, 76 S.C. 395, 405, 57 S.E. 185, 189 (1907). "Checks and balances" is not just an abstract phrase, but describes a set of concrete governmental arrangements allowing each branch of government to discharge its responsibilities without infringing on those of another branch. One of these arrangements is judicial review of certain executive and legislative actions. In determining when it is permissible to conduct such review, it is important to distinguish between matters of policy and matters of law. The courts are not in the business of reviewing the merits of legislative or executive policies; rather, our role is confined to determining whether a particular action is legal. Thus, for example, a court would refrain from adjudicating whether a commission's decision to sell certain property, under its control is a good policy decision. However, if the issue is whether the commission had the legal authority to sell the property, then the court has an obligation to review the dispute. It is precisely the latter type of dispute that is before us in this case: Newman has alleged that the Commission committed ultra vires acts by attempting to dissolve the Commission and to deed two pieces of property to the City of Columbia and two to Richland County.

B. POWER TO CONVEY PROPERTIES
The substantive issue before this Court is whether the Commission had the power to convey the properties in dispute. The Commission was created by Act No. 69, 1963 S.C. Acts 63. This Act enumerates the powers of the Commission, declaring that the Commission has the power to "acquire, own, hold in trust, preserve, restore, maintain, suitably mark, develop, advertise, and operate buildings and structures of historic significance, and the land upon which the same may be situate, in Richland County, and to receive funds, grants, donations and appropriations for the accomplishment of these purposes." 1963 S.C. Acts at 64, § 4(5). Moreover, "The Commission shall have power and authority to borrow money and to mortgage or pledge its real and personal property . . . ." 1963 S.C. Acts at 65, § 8.[1] Conspicuously absent from the above list of powers is the power to convey property. When a statute expressly enumerates the requirements on which it is to operate, additional requirements are not to be implied. Byrd v. Irmo High School, ___ S.C. ___, 468 S.E.2d 861 (1996). The statute specifically sets forth the powers of the Commission; the power to convey property may not be implied from the statute. This would be consistent with the role of the Commission as a "Historic Preservation Commission."
Nor would the power to convey be implied by S.C. Const. Art. VIII, § 17 ("The provisions of this Constitution and all laws concerning local government shall be liberally construed in their favor. Powers, duties, and responsibilities granted local government subdivisions by this Constitution and by law shall include those fairly implied and not prohibited by this Constitution."). S.C.Code Ann. § 4-9-80 (rev. 1986) states that the
provisions of this chapter shall not be construed to devolve any additional powers upon county councils with regard to public service districts, special purpose districts, water and sewer authorities, or other political subdivisions by whatever name designated, (which are in existence on the date one of the forms of government provided for in this chapter becomes effective in a particular county) and such political subdivisions shall continue to perform their statutory functions prescribed in laws creating such districts or authorities except as they may be modified by act of the General Assembly....
In Thomas v. Cooper River Park & Playground Commission, ___ S.C. ___, 471 S.E2d 170 (1996), my brothers on this Court held that under section 4-9-80, Home Rule *77 legislation cannot be construed to give county government more power over a pre-Home Rule district than it is given in the original act creating such a district. As a special purpose district, the Commission, did not acquire any additional powers by virtue of Rule legislation. Accordingly, the Commission did not have the power to convey the disputed properties.
This case should be affirmed.
NOTES
[1] RCHPC has abandoned its appeal.
[2] The Act was amended in April 1988. 1988 S.C. Acts 790. The amendment is irrelevant to this appeal.
[3] The Mann-Simmons Cottage; The Robert Mills Historic House and Park; The Hampton-Preston Mansion and Garden; and The Woodrow Wilson Boyhood House.
[4] The Mann-Simmons Cottage and the Robert Mills House.
[5] The Hampton-Preston property and the Woodrow Wilson House.
[6] County joined City's and RCHPC's motions.
[7] Although Newman makes vague complaints about lack of notice that this resolution would be introduced at the May meeting, she has neither pled nor proved this election violated any procedural rules of the RCHPC.
[1] In 1988, the Act was amended, but the amendments did not alter the originally enumerated powers. See Act No. 790, 1988 S.C. Acts 6458.